GRANT W. CARLSON v. ESTELLE RAND.

146 N. W. (2d) 190.

November 10, 1966—No. 40,071.

---

[1] See Bensel v. Hall, 177 Minn. 178, 225 N. W. 104, as to the nature of alimony.

*Mahoney & Mahoney, Thomas E. Dougherty,* and *John F. Angell,* for appellant.

*Robins, Davis & Lyons, Roger T. Sahr,* and *Dale I. Larson,* for respondent.

NELSON, JUSTICE.

Appeal from a judgment of the Hennepin County District Court entered pursuant to a directed verdict in favor of defendant. The cause of action arose out of incidents occurring on June 26, 1962, when plaintiff fell and was injured because of the claimed negligence of defendant.

Plaintiff and defendant are brother and sister respectively. Their mother, Hulda Nagel, now deceased, maintained her home at 3704 18th Avenue South in Minneapolis. She had lived there for 30 years and dur-

ing the 10 years preceding the accident had lived alone. Plaintiff, a pressman 58 years of age, and his sister had their own families and homes.

For about 5 years prior to the date of the accident plaintiff, defendant, and their mother would purchase eggs outside the city and bring them back to the mother's home where they would divide them up.

The entrance to Mrs. Nagel's home opened on a front porch. From there one entered the living room, the largest of all the rooms in the house. The inside doorways led from the living room directly into the kitchen and on from there into what is referred to as the "storeroom." The doorways between the living room, the kitchen, and the storeroom were lined up so that a person could look from the living room through the doorways into the storeroom. Plaintiff was entirely familiar with this arrangement at his mother's home and provided all the evidence concerning it. Any further description of the premises is unnecessary since plaintiff does not contend that the storeroom, in which he fell, was in darkness or dangerous in any other way at the time of the accident.

The contents of the storeroom consisted of a dresser, a table upon which egg cartons were customarily stored, and a rolled-up rug placed inside the room by defendant on the day in question to be picked up for dry-cleaning. Plaintiff was well aware of this room's use for storage purposes.

Plaintiff drove to his mother's home on the day of the accident at 1:30 p. m. to pick her up for the purpose of going to Maple Plain to purchase a crate of eggs. The mother was then alone in the home. They drove to Maple Plain and returned with the eggs at 6:35 p. m. Upon arriving at the mother's home plaintiff carried the egg crate from the car into the house, setting it down in the living room. His sister, defendant, was there but engaged in talking on a telephone in the living room at the time. The mother asked defendant how many eggs she wanted, and defendant indicated the customary "three dozen." The mother then told plaintiff to take the eggs into the storeroom and to put them into the egg cartons as he usually did. While his sister was still on the telephone, plaintiff picked up the egg crate, which was 13″ by 13″ by 12″, by the cleats at the top of the crate and carried it chest high from the living room straight through the kitchen and into the storeroom. He took three

steps upon entering the storeroom and then tripped over the rug, sustaining an injury to his hip. Plaintiff admitted that there was a light switch next to the storeroom doorway and that he knew its location, but said that he didn't turn the light on because "it was light enough to see where I was walking." He admitted there was enough light so that he could have seen a bushel basket and could have seen the rug had he looked.

Plaintiff, at the trial, presented his witnesses, cross-examined defendant under the rules, and rested his case. Defendant thereupon moved for a directed verdict which the trial court granted, finding no negligence on the part of defendant in storing a rug in a storeroom and concluding, after hearing the testimony, that it was wholly unforeseeable that plaintiff would not see the rug and would unnecessarily carry an egg crate of the size involved in such a manner as to obstruct his vision. Thus, because of the facts that the rug was plainly visible and that plaintiff admittedly made no attempt to look where he was going, the trial court found him guilty of contributory negligence as a matter of law.

The issue is whether or not the trial court erred in holding, as a matter of law, that defendant was not negligent and that plaintiff was contributorily negligent.

In Brulla v. Cassady, 206 Minn. 398, 403, 289 N. W. 404, 407, we stated the rule to be:

"A verdict may be directed only in those unequivocal cases where it clearly appears to the court on the trial that it would be its manifest duty to set aside a contrary verdict as not justified by the evidence or as contrary to the law applicable to the case. Though the evidence on the part of the plaintiff standing alone would justify submitting a case to the jury, yet the court should direct a verdict for the defendant if, upon all the evidence, it would be its manifest duty to set aside a verdict against him. In other words, the court should direct a verdict in favor of a party in whose favor the evidence overwhelmingly preponderates, though there is some evidence in favor of the adverse party."

See, Coleman v. Huebener, 269 Minn. 198, 130 N. W. (2d) 322; Yates v. Gamble, 198 Minn. 7, 15, 268 N. W. 670, 674; Giermann v. St. P.

M. & M. Ry. Co. 42 Minn. 5, 43 N. W. 483; Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. ed. 819; 19 Dunnell, Dig. (3 ed.) § 9764.

We have held that the test to be applied in determining whether a verdict should be directed by the trial court is whether it is plain from the evidence submitted that all men can draw but one conclusion. Thus, in a negligence action the test for determining whether a verdict should be directed is whether men could differ as to the question of negligence on the part of the defendant or contributory negligence on the part of the plaintiff picked up the egg crate, which was 13″ by 13″ by 12″, by the the defendant's conduct is characterized by the elements necessary to give rise to an action based on negligence:

"a.  A legal duty to conform to a standard of conduct for the protection of others against unreasonable risks.

"b.  A failure to conform to the standard.

"c.  A reasonably close causal connection between the conduct and the resulting injury.

"d.  Actual loss or damage resulting to the interests of another." Prosser, Torts (2 ed.) § 35.

If any of the foregoing elements is clearly missing, and reasonable men could not differ on the point, then the plaintiff has failed to sustain his burden of proof and the court is justified in directing a verdict.

The evidence in the present case would indicate that plaintiff has proved the last two elements since defendant admits that she placed a rug in the storeroom while plaintiff testifies that he tripped over that rug and, in doing so, sustained injuries.

Plaintiff contends that defendant, though not the owner or even an occupant of the place where the accident occurred, had, nevertheless, a duty not to maintain a condition involving an unreasonable risk of physical harm to others or, if she did so, at least to give them warning of it. Plainly the first aspect of this contention is based upon Restatement, Torts (2d) § 386, which provides:

"Any person, except the possessor of land or a member of his household or one acting on his behalf, who creates or maintains upon the land

a structure or other artificial condition which he should recognize as involving an *unreasonable risk of physical harm* to others upon or outside of the land, is subject to liability for physical harm thereby caused to them, \* \* \*." (Italics supplied.)

Plaintiff also contends that this duty is the same as the duty imposed upon the owner or occupier of land. That duty was discussed in Glenn v. Munson, 259 Minn. 180, 181, 106 N. W. (2d) 551, 552, cited by plaintiff, wherein we said that we are committed to the rule of Restatement, Torts, § 342, respecting the duties owed by the possessor of real estate to a gratuitous licensee. The rule stated in § 342 is as follows:

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

"(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and *should expect that they will not discover or realize the danger,* and

"(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and risk involved, and

"(c) the licensees do not know or have reason to know of the condition and the risk involved." (Italics supplied.)

In the Glenn case this court stated the rule to be that, where a safe condition which is familiar to a licensee is changed by the possessor of real estate *and is known by him to create a possible unsafe condition,* "the duty to warn of such changed condition exists under the above rule." 259 Minn. 182, 106 N. W. (2d) 553.

It will be noted that in the Glenn case the unsafe condition was a waxed floor. The plaintiff had walked on the floor when it was unwaxed and the defendant did not inform the plaintiff that she had recently waxed it. This court, however, pointed out in the Glenn case that a waxed floor, of itself, ordinarily is no evidence of negligence. Looking at the facts in this case, the same can be said of a rolled-up rug which is placed on the floor of a storeroom. Where, then, is there sufficient preponderating proof to establish negligence against defendant? Negligence in this case would have to be based upon facts which clearly establish that

the party charged with negligence was the cause of changing a familiar, safe condition into an unfamiliar, unsafe condition; had the duty to warn of that change; and failed to do so.

The cases where this court has found it a duty to warn of a changed condition are those in which the plaintiff could not "discover it by the ordinary use of her faculties." Malmquist v. Leeds, 245 Minn. 130, 139, 71 N. W. (2d) 863, 869.

In the case of Wiseman v. N. P. Ry. Co. 214 Minn. 101, 107, 7 N. W. (2d) 672, 675, this court said:

"The purpose of a warning is to apprise a party of the existence of danger of which he is not aware to enable him to protect himself against it. * * * *There is no duty to warn against risks which are open and obvious.*" (Italics supplied.)

Furthermore, in comment *b,* following Restatement, Torts (2d) § 342, it is said:

"If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it."

Thus, absent factors such as poor illumination or noncontrasting colors, changes in elevation do not ordinarily excuse failure to see what is in plain sight. Johnson v. R. E. Tapley, Inc. 272 Minn. 19, 138 N. W. (2d) 538.

In Tonne v. Becker Grain & Lbr. Co. Inc. 273 Minn. 73, 139 N. W. (2d) 797, this court held:

"The owner or occupant of business premises does not insure the safety of the invitee; nevertheless, he is bound to exercise ordinary or reasonable care to keep the premises in safe condition for those who come upon them by his express or implied invitation. The invitee is under the corresponding duty to exercise reasonable care for his own safety and to observe that which is obvious to the ordinarily prudent person."

In Flynn v. Arcade Investment Co. 253 Minn. 107, 91 N. W. (2d) 113, this court said that a building owner is not under an obligation to protect

an invitee from known hazards or hazards apparent upon ordinary observation. We held there that plaintiff's conduct constituted contributory negligence as a matter of law and barred her recovery for injuries sustained in a fall.

In the case before us it is plain that the Restatement rules upon which plaintiff bases his claim that defendant was negligent do not apply in the absence of evidence that defendant by her conduct created a condition she should have recognized as creating "an unreasonable risk of physical harm to others" (Restatement, Torts [2d] § 386) and in view of the further fact that she could not anticipate that plaintiff would not watch where he was going. We think plaintiff's own statement of claimed evidence in support of his contentions, set forth in his brief, is clearly illustrative of the lack of evidence to support his claims:

"The plaintiff was completely unaware of the rug. He had delivered eggs into the back room in the same fashion for a total of five years. The defendant knew of this regular routine. She had always placed the cartons in that same back room. Further, the plaintiff had carried these eggs in the same manner for all those years. The defendant saw the plaintiff with the eggs and certainly saw how he carried them. She had previously placed the rug on the back room floor."

The fact that plaintiff had brought eggs into the back room in the same fashion for some five years does not provide him with a special license not to look where he was going nor to demand from defendant that she should have known he would not look where he was going and therefore owe him a duty to provide him with some special guidance. In fact, plaintiff seems to contend that he did not have to watch where he was going. That has never been the law.

Plaintiff also argues that the rug constituted a "changed condition" as defined in Glenn v. Munson, *supra.* In the Glenn case the waxed floor upon which the plaintiff fell had not been waxed on her previous visits and its changed condition was not immediately obvious to her when she entered the room. In the instant case, however, the rug was in clear view some three steps ahead into the storeroom and gave its own warning. It is clear that the Glenn case does not extend to a situation

where the plaintiff just does not look where he is going. If, as the court held in the Glenn case, a waxed floor, of itself, is no evidence of negligence, a rolled rug, of itself, here is simply not evidence of negligence. The facts are clear and undisputed that the rug was plainly visible and that plaintiff did not look where he was going. The lighting was sufficient, as plaintiff admits. He also admits that he could have seen the rug had he looked. The fact that plaintiff liked to carry the egg crate in a position that blinded him can offer no excuse or justification for his failure to look.

We conclude that the court had no choice but to direct a verdict against plaintiff upon the state of the record.

Affirmed.