# WILLARD C. PETERSON, TRUSTEE FOR THE HEIRS OF CYNTHIA S. PETERSON, v. MILAN S. BALACH, SPECIAL ADMINISTRATOR OF THE ESTATE OF HARRY G. JOHNSON.

199 N. W. 2d 639.

July 14, 1972—No. 42630.

*MacDonald & Munger* and *James J. Bang,* for appellant.

*Sullivan, Hanft, Hastings, Fride & O'Brien, Tyrone P. Bujold,* and *William M. Burns,* for respondent.

Heard before Knutson, C. J., and Murphy, Kelly, and Hachey, JJ. Reconsidered en banc.

RONALD E. HACHEY, JUSTICE.*

Appeal following a directed verdict in favor of defendant in an action for death by wrongful act.

On Saturday, June 8, 1968, 11-year-old Cynthia Peterson was invited to the lake cabin of Harry Johnson in rural St. Louis County to spend the night as a guest of Mr. Johnson's 13-year-old daughter. The cabin had been purchased by Mr. Johnson in May 1967. It was equipped with lights, refrigerator, and cooking stove, all of which operated on LP gas. The refrigerator was the only appliance operating that night. All of the windows and doors of the cabin were closed when the three occupants went to bed. The next morning a concerned neighbor entered the cabin and found the girls dead where they had been sleeping and Johnson dead near the cabin door. The neighbor noticed a strong "rotten egg" or gas odor, which he had not noticed the night before. Examination of the bodies disclosed that the deaths were caused by inhalation of carbon monoxide. Plaintiff's expert witness testified that both the odor and the carbon monoxide came from the refrigerator. Prior to the accident, Mr. Johnson's wife had noticed a rotten-egg-type of odor in the cabin, but she had assumed it was caused by the fact the tanks which supplied gas to the cabin were getting low on gas. Two additional tanks of LP gas had been delivered on the Sunday prior to June 8, but were not hooked up. As far as could be determined, neither Mr. nor Mrs. Johnson had ever cleaned or checked the operating unit of the gas refrigerator. The refrigerator was not used after June 9.

The carbon monoxide was ultimately caused by rust flakes which blocked the air holes between the casing and the barrel

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

of the burner in the bottom of the refrigerator. The blocking of the air holes caused an incomplete combustion which resulted in a large yellow flame and produced carbon monoxide. While the manufacturer made allowance for some accumulation of debris, the rust flakes exceeded this amount by 4 or 5 times. Plaintiff's expert also testified that the barrel had not been emptied for some time and that it could have taken a year or longer for the rust flakes to accumulate in the quantity found. Mr. Johnson had owned the cabin little more than a year, which would indicate that he was unaware of the necessity of cleaning the burner. Furthermore, the odor is not necessarily linked with the production of carbon monoxide. Mr. Johnson apparently thought the odor was caused by the tanks getting low on gas, since he had had two additional tanks delivered the previous Sunday.

On the foregoing facts, the trial court found no evidence of a breach of duty or negligence on the part of Mr. Johnson and directed a verdict in favor of defendant. A motion for a new trial was subsequently denied. Plaintiff appeals from the adverse order and judgment.

On the basis of existing law, the trial court was correct in directing a verdict for defendant. It clearly appears that Cynthia Peterson was a social guest and, therefore, a licensee. This court has. held as recently as Holland v. Hedenstad, 287 Minn. 244, 246, 177 N. W. 2d 784, 785 (1970), that "a possessor of property owes a licensee no duty of insection or of affirmative care to make the premises safe for a licensee's visit." See, also, Thayer v. Silker, 267 Minn. 268, 126 N. W. 2d 263 (1964). We have adopted the Restatement's rules concerning the duties of a possessor of real estate to a licensee. Restatement, Torts 2d, § 341, states:

"A possessor of land is subject to liability to his licensees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if,

"(a)   he should expect that they will not discover or realize the danger, and

"(b)   they do not know or have reason to know of the possessor's activities and of the risk involved."

Section 342 states:

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

"(a)   the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

"(b)   he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and risk involved, and

"(c)   the licensees do not know or have reason to know of the condition and the risk involved."

See, Holland v. Hedenstad, *supra;* Carlson v. Rand, 275 Minn. 272, 146 N. W. 2d 190 (1966); Sandstrom v. The AAD Temple Building Assn. Inc. 267 Minn. 407, 127 N. W. 2d 173 (1964); and Thayer v. Silker, *supra.*

We are urged by appellant to break with tradition and abolish the distinctions relating to the landowner's duty toward trespassers, licensees, and invitees, which we have adhered to in our previous decisions.

We herewith abolish the traditional distinctions governing licensees and invitees but decline to rule on the question of a landowner's duty toward trespassers. Judicial restraint suggests that this question be deferred to a later day and to another case. Our judgment dictates that rules which have evolved over decades of common-law experience in this state should not be summarily abrogated except in an adversary setting after a thorough and careful presentation by litigants who have a stake in the outcome.

Furthermore, the considerations governing a landowner's or occupant's liability to trespassers may be fundamentally differ-

ent from his duty to those whom he has expressly or by implication invited onto his property. Burglars are trespassers; vandals are trespassers. We have criminal statutes governing trespassers. Minn. St. 609.605. Sweeping away all distinction between trespassers and social guests and business invitees is a drastic step to take because there may be, and often is, good reason to distinguish between a trespasser and a social guest. There is little or no reason to distinguish between a social guest and a business invitee.

Our course of action emulates the changes made in England by the Occupiers' Liability Act, 1957 (5 & 6 Eliz. II, c. 31). That act abolished the distinction between invitees, licensees and so-called contractual visitors but made no change in the law as to the liability of an occupant of land to trespassers.[1]

---

[1] See Payne, *The Occupiers' Liability Act,* 21 Modern L. Rev. 359, which comments: "The Occupiers' Liability Act, 1957, which came into force on January 1, 1958, makes important changes in the law governing liability for injuries suffered on dangerous premises. The Act gives effect to the recommendations of the Law Reform Committee, and substitutes for the common law rules which previously regulated an occupier's liability towards his invitees, licensees and contractual visitors a set of statutory provisions which constitute a minor code. In this article the effect of the Act will be briefly examined.

"A Single Duty to all Lawful Visitors

"The principal change made by the Act is to impose on an occupier of premises the same duty, described as the 'common duty of care,' towards all his lawful visitors, 'except in so far as he is free to and does extend, restrict, modify or exclude his duty to any visitor or visitors by agreement or otherwise.' The persons by whom and to whom the common duty of care is owed are the same 'as the persons who would at common law be treated as an occupier and as his invitees or licensees.' The duty owed to a person who enters premises in exercise of a contractual right with the occupier, so far as it depends on a term to be implied in the contract, is also the common duty of care. The Act therefore abolishes the common law distinction between invitees, licensees and contractual visitors. It is true that this is not done in so many words, but no significance is to be attached to this omission. A legal distinction is abolished by depriving it of legal consequence, and

Legal writers, scholars, and, more recently, judges have been highly critical of the common-law straitjacket of highly technical and arbitrary classifications which have often led to confusion in the law and inequity in the cases decided. In many instances,

this is what the Act has done by providing that the old common law distinctions shall no longer determine the incidence of different rules of law; though, as we shall see, the broad considerations on which the common law distinctions were founded may still be relevant to the question whether the common duty of care has been discharged in a particular case.

"The Act makes no change in the law governing liability to trespassers, and so, while it will no longer be necessary to classify a lawful visitor as an invitee, licensee or contractual visitor, it will still be necessary to resort to the old law in order to determine whether the plaintiff would have been a licensee, express or implied, or a trespasser. Indeed, since the effect of the Act is to improve the position of a person who was a mere licensee under the old law, it may be said that the distinction between licensees and trespassers is now of even greater consequence. What effect this widening of the gap between the licensee and trespasser will have on marginal cases is uncertain. Now that a more positive duty is imposed on an occupier to prevent injury to all his lawful visitors, it may be, as the Law Reform Committee appeared to contemplate, that judges and juries will be less astute to infer implied licenses than has sometimes been the case in the past."

See, also, Prosser, Torts (3 ed.) § 58: "* * * Those who enter upon land are divided into three fixed categories: trespassers, licensees, and invitees, and there are subdivided duties as to each. They make out, as a general pattern, a rough sliding scale, by which, as the legal status of the visitor improves, the possessor of the land owes him more of an obligation of protection. This system has long made legal writers quite unhappy, and has disturbed some judges, particularly since there are cases which are difficult to fit into any of the three specifications. This finally led to the adoption in England, in 1957, of a statute which abrogated the distinction between licensees and invitees, and declared that the occupier owes the same 'common duty of care' to both, with reasonable care merely modified according to the circumstances of the entry. The law as to trespassers has, however, not been affected. The fact that the jury has virtually disappeared from negligence actions in England may have played some part in encouraging the passage of the act."

recovery by an entrant has become largely a matter of chance, dependent upon the pigeonhole in which the law has put him, e. g., "trespasser," "licensee," or "invitee"—each of which has had radically different consequences in law.[2] While negligence has emerged as the main basis of liability for unintended torts, real property law and theory still dominate recoveries for injuries occurring on private property.

A strong argument can be advanced against making the status of a licensee or invitee determinative of a claimant's rights. This is not to say that the status of the entrant should not be considered at all; it would continue to have validity in determining such factors as foreseeability or expectations of the claimant.[3] The status of such claimants, however, would become only one element among many to be considered in determining the landowner's liability; the standard of care required of the landowner (or the person charged with the responsibility for the condition of the land) would be no more and no less than that of any other alleged tortfeasor. Comment, 44 N. Y. U. L. Rev. 426; Comment, 18 Kan. L. Rev. 161. The standard of care would be that of the reasonable man, just as it is with regard to conduct in any other place.

We have reached the point where we should squarely face the issue of why the law relating to the duties of owners and occupiers of land to invitees and licensees should not be merged with general negligence law. Over the years, in the attempt to resolve the problems which arose under varying fact situations, glaring inequities have developed. In the relationship between guest and host, we have provided for two standards of care: While the guest is on the host's property, one standard applies, but if the host should invite his guest to accompany him in his automobile, a different standard of care comes into use upon entry into the

---

[2] Mile High Fence Co. v. Radovich, 28 Colo. App. 400, 474 P. 2d 796 (1970).

[3] See p. 174, *infra*.

vehicle.[4] We think the time has come when uniformity should be attempted by replacing the classification system with one uniform standard—that of the reasonable man.

Another approach to the problem, over the years, has been to create exceptions or twist the rules in order to arrive at a just result. Our own court has recognized the harshness of the common-law classifications rule and has attempted to temper the results by following a restrictive policy. In 1951, we said:

"* * * At least two legal writers have even criticized the rule that bare licensees are to be protected only against wilful or wanton injury. Mr. Dunnell has described the so-called 'wilful or wanton' rule as 'a barbaric formula,' and Mr. Bohlen has ably demonstrated that the rule is founded upon a feudal concept of property rights anachronistic in modern law. * * * It is apparent that both in Minnesota and elsewhere the trend of decisions is to avoid extending these harsh rules beyond their present limits, and, at least, in the case of the 'wilful or wanton' rule, the tendency is to whittle it away with exceptions." Shypulski v. Waldorf Paper Products Co. 232 Minn. 394, 399, 45 N. W. 2d 549, 552.

While, admittedly, such a policy is better than a strict adherence to the classification system, it is unsatisfactory because it creates a rigid system which is at the same time complex, confusing, inequitable, and, paradoxically, nonuniform. Today, there are so many exceptions that it is nearly impossible to record all of them. One blatant example which demonstrates an attempt to prevent a gross inequity is found in Gould v. DeBeve, 117 App. D. C. 360, 330 F. 2d 826 (1964), where the court created an exception limited to 2½-year-old boys climbing on a particular type of third-floor window sill. A quick survey of exceptions to the

---

[4] Similarly, a guest who visits a seaman on ship is protected by a different standard of care than if the visit had occurred at the seaman's house. Likewise, a house visit is covered by a different standard of care than a visit with an apartment tenant.

rule will highlight the present tattered state of the law.

That portion of the rule relating to social guests is patchwork. Generally, a social guest is a licensee and not an invitee. This is because he is treated as a "member of the family," who takes the premises as he finds them. Wolfson v. Chelist, 284 S. W. 2d 447, 450 (Mo. 1955). He is on the land for his own benefit, so he cannot demand special treatment. Exceptions include a failure to warn of a known defect, Malmquist v. Leeds, 245 Minn. 130, 71 N. W. 2d 863 (1955); situations where a landlord has control of a common way, Taneian v. Meghrigian, 15 N. J. 267, 104 A. 2d 689 (1954) ; and situations where the visit occurs in a hotel and the visitor's injury is caused by a latent defect of which he is not informed, Goldstein v. Healy, 187 Cal. 206, 201 P. 462 (1921). Exceptions are also created by distinguishing between active and passive negligence. Potts v. Amis, 62 Wash. 2d 777, 384 P. 2d 825 (1963).[5] Exceptions have also developed as to work done by an independent contractor. Chance v. Lawry's, Inc. 58 Cal. 2d 368, 24 Cal. Rptr. 209, 374 P. 2d 185 (1962).

In spite of dedicated attempts to avoid the harshness of the restrictions by creating exceptions, some courts have recognized the shortcomings of continuing to cling to the original common-law classifications and have created new classifications. Ohio has created a special category for social guests.

"A reasonable solution of the difficulty of forcing social guests into any one of the three molds commonly recognized, to wit, trespasser, licensee or invitee, is solved by ceasing such effort and merely considering and discussing social guests as social guests and by referring to the one owing the duty and obligation to the guest as the host." Scheibel v. Lipton, 156 Ohio St. 308, 328, 102 N. E. 2d 453, 462 (1951).

---

[5] This has been carried to the extreme where active negligence was found in the failure to maintain adequate barriers around a backyard swimming pool. Hansen v. Richey, 237 Cal. App. 2d 475, 46 Cal. Rptr. 909 (1965).

Louisiana has placed social guests in the invitee category. Alexander v. General Acc. Fire & Life Assur. Corp. 98 So. 2d 730 (La. App. 1957). New Jersey has bucked tradition by allowing a relative who helps out with household tasks to be classed as an invitee. Benedict v. Podwats, 109 N. J. Super. 402, 263 A. 2d 486, affirmed, 57 N. J. 219, 271 A. 2d 417 (1970). Connecticut has merely decided to unofficially elasticize its categories, as shown by Guilford v. Yale University, 128 Conn. 449, 23 A. 2d 917 (1942), where the court found that an old graduate, injured while walking around the campus at 2 a. m. looking for a place to urinate, was an invitee. Montana has restricted itself to two categories—(1) invitees, and (2) licensees and trespassers. Chichas v. Foley Brothers Grocery Co. 73 Mont. 575, 236 P. 361 (1925); Comment, 30 Mont. L. Rev. 153, 154.

Even when they have agreed upon the status of a party within one of the given classes, some courts have been unable to agree upon the reason for doing so. Some point to the early English case of Parnaby v. Lancaster Canal Co. 11 Ad. & E. 223, 113 Eng. Rep. 400 (Ex. 1839), and argue that there must be some financial benefit before an entrant may be classified as an invitee; others point to the same case and say that if the place is held open to the public, there is an implied representation that the place is safe. See, generally, Prosser, Torts (3 ed.) § 61. In states following the financial benefit theory, the percentage of people injured in a depot restroom who had "intended to buy a magazine" is phenomenal. Neither theory, however, offers a justification for distinguishing business invitees from other persons whom the landowner invites onto his land.

Recently, courts are beginning to completely abandon the rigid classification system. The first move in this direction was made in a 1959 admiralty case by the United States Supreme Court, Kermarec v. Compagnie Generale Transatlantique, 358 U. S. 625, 630, 79 S. Ct. 406, 410, 3 L. ed. 2d 550, 554 (1959), where the court stated:

"The distinctions which the common law draws between li-

censee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.' "

Nine years later, in Rowland v. Christian, 69 Cal. 2d 108, 70 Cal. Rptr. 97, 443 P. 2d 561, 32 A. L. R. 3d 496, the California Supreme Court followed suit. One of its basic objections to the old system was stated as follows:

"Although in general there may be a relationship between the remaining factors and the classifications of trespasser, licensee, and invitee, there are many cases in which no such relationship may exist. Thus, although the foreseeability of harm to an invitee would ordinarily seem greater than the foreseeability of harm to a trespasser, in a particular case the opposite may be true. The same may be said of the issue of certainty of injury. The burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach may often be greater with respect to trespassers than with respect to invitees, but it by no means follows that this is true in every case. In many situations, the burden will be the same, i. e., the conduct necessary upon the defendant's part to meet the burden of exercising due care as to invitees will also

meet his burden with respect to licensees and trespassers." 69 Cal. 2d 117, 70 Cal. Rptr. 103, 443 P. 2d 567, 32 A. L. R. 3d 504.

Proponents of a change in the law, now armed with the endorsement of both the United States and California Supreme Courts, pressed for change in other jurisdictions. In 1969, Hawaii abandoned the classification test. Pickard v. City and County of Honolulu, 51 Hawaii 134, 452 P. 2d 445 (1969). Kentucky seemed to follow, but since the fact pattern involved a child, the position of the court cannot be determined with certainty. Louisville Trust Co. v. Nutting, 437 S. W. 2d 484 (Ky. 1968). The court cited Rowland and said: "Whether such children are classified as trespassers, licensees or invitees is not a controlling consideration." 437 S. W. 2d 485. In De Gildo v. Caponi, 18 Ohio St. 2d 125, 131, 247 N. E. 2d 732, 736 (1969), the Supreme Court of Ohio refused, because of judicial restraint, to "eliminate distinctions based upon the status of a visitor upon the premises and to adopt a rule of ordinary care under all the circumstances as the measure of the duty of a landowner or landoccupier." The writer of the opinion made the following comments, however:

"The writer believes that a man's life or limb does not become less worthy of protection or compensation because he has come upon the land for social rather than for business purposes. The amount of care required of a landoccupier should depend on ordinary care under all the circumstances, the specific purpose of his invitation or permission being one of the facts to be considered. As Judge Allen said in Drew v. Gross, 112 Ohio St. 485, 491:

" '* **As conditions change and modes of life alter, the duty to observe ordinary care in the use of one's own property, while not altering in its essentials, will alter in its details.' :

"Immunities of landowners have been eliminated in the jurisdiction of their origin by legislative act, Occupier's Liability Act, 1957, 5 and 6 Eliz. 2, 302, Ch. 31, and limited judicially in several jurisdictions in this country. See Rowland v. Christian, 70 Cal.

Rptr. 97, 443 P. 2d 561; Taylor v. New Jersey Hwy. Authority, 22 N. J. 454, 126 A. 2d 313; Potts v. Amis, 62 Wash. 2d 777, 384 P. 2d 825; Gould v. DeBeve (C.C.A.D.C.), 330 F. 2d 826."

The Court of Appeals for the First Circuit noted the erosion, but was compelled to follow Massachusetts law. Burns v. Turner Const. Co. 402 F. 2d 332, 335 (1 Cir. 1968). In Mile High Fence Co. v. Radovich, 28 Colo. App. 400, 474 P. 2d 796 (1970), Colorado reversed its position. In a concurring and dissenting opinion in Walsh v. Sun Oil Co. 437 Pa. 80, 89, note 4, 262 A. 2d 128, 132 (1970), Mr. Justice Roberts chided the plaintiffs for failing to argue against the classification system, making it clear that, while they may have been satisfied with the present state of the law, he thought it should be changed. Abolition was also suggested in a concurring opinion in Ives v. Swift & Co. 183 N. W. 2d 172 (Iowa 1971).

Although the time has come when we must reexamine our previous decisions, the doctrine of stare decisis restrains us from overruling our previous holdings with retroactive effect. In the present case, we prospectively eliminate previous restrictions to which we have adhered.[6] The law to be applied to this case, and to causes of action arising after the effective date of this decision and involving invitees or licensees, is as follows:

(1) An entrant's status as a "licensee," or "invitee" is no longer controlling, but is one element, among many, to be considered in determining the landowner's liability under ordinary standards of negligence.

---

[6] It is within our inherent power as the highest court of this state to give a decision prospective or retrospective application without offending constitutional principles. G. N. Ry. Co. v. Sunburst Oil & Refining Co. 287 U. S. 358, 53 S. Ct. 145, 77 L. ed. 360 (1932). We conclude that in fairness to all litigants and trial courts a more equitable solution is to provide prospective application of the new rules, effective from and after the date of this decision, except that they shall apply to the instant matter.

(2) The duty required of a landowner (or the person charged with responsibility for the condition of the land) as to licensees and invitees is no more and no less than that of any other alleged tortfeasor, and that duty is to use reasonable care for the safety of all such persons invited upon the premises, regardless of the status of the individuals.

As was stated in Mile High Fence Co. v. Radovich, *supra*, the status of the injured person might well be a factor which the factfinders could consider. The principal issue, however, will not be "in what category shall we place the injured person" but, rather, "did the owner (or the person responsible) act as a reasonable person in view of the probability of injury to persons entering upon the property" whether they be licensees or invitees.

Under this new rule the extent of the duty of the owner (or the person responsible) to inspect, repair, or warn those who come upon the land as licensees or invitees will be decided by the test of reasonable care. Likewise, such a person entering upon the land will be held to the same standard of care, that of a reasonable man under the circumstances then existing. The occupant's duty will be modified according to the expected use to which the land will be put. The entrant's duty of the exercise of reasonable care for his own safety will likewise vary according to the circumstances under which he enters the land. Rather than place the entrant (invitee or licensee) within a rigid classification, the new rule will impose the duty of reasonable care on both the landowner and entrant.

After all pertinent factors are considered, depending upon the circumstances of each case,[7] the factfinders will be asked to determine if liability exists for damages sustained by an entrant.

---

[7] Among the factors to be considered might be the circumstances under which the entrant enters the land (licensee or invitee); foreseeability or possibility of harm; duty to inspect, repair, or warn; reasonableness of inspection or repair; and opportunity and ease of repair or correction.

Absolute liability in any case is not intended by use of the new rule.

For the reasons herein stated, the new rule enunciated shall apply to the case at bar. The judgment entered upon the verdict directed for defendant and the order denying plaintiff's motion for a new trial are reversed, and the matter is remanded for a new trial.

Reversed and new trial granted.

MR. JUSTICE TODD and MR. JUSTICE MACLAUGHLIN, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.