Curtis R. BROUGHTON, Respondent,

v.

CURRAN V. NIELSEN COMPANY, INC., Appellant,

John Sahf Construction, Inc., Respondent.

CURRAN V. NIELSEN COMPANY, INC., third-party plaintiff, Appellant,

v.

JOHN SAHF CONSTRUCTION, INC., third-party defendant, Respondent,

Anderson Heating and Roofing, Inc., third-party defendant, Respondent.

No. 49288.

Supreme Court of Minnesota.

Dec. 28, 1979.

Brown, Bins & Klampe and Frederic N. Brown, Rochester, for appellant.

Rietz, Rietz & Rietz and Larry J. Rietz, Owatonna, for Broughten.

Wm. J. Nierengarten, Austin, for Sahf.

VanEps & Gilmore and John R. deLambert, Minneapolis, for Anderson Heating and Roofing, Inc.

Heard before OTIS, ROGOSHESKE, and SCOTT, JJ., and considered and decided by the court en banc.

OTIS, Justice.

Plaintiff Curtis Broughton was injured on November 25, 1975, when he fell through an opening in the roof of the new Claremont High School gymnasium, then under construction. He brought this negligence action against Curran V. Nielsen Co., Inc. (Nielsen), a subcontractor. Nielsen thereafter commenced a third-party action against John Sahf Construction, Inc. (Sahf), the general contractor, and against plaintiff's employers, Anderson Heating and Roofing, Inc. (Anderson), a fellow subcontractor. Plaintiff thereafter added Sahf as a defendant.

By a special verdict a jury absolved Anderson and Sahf of negligence and attributed causal negligence seventy-eight percent to Nielsen and twenty-two percent to plaintiff. Judgment was subsequently entered against Nielsen. Nielsen appeals from the denial of its post-trial motions and from the judgment. We affirm.

Early in the morning of Monday, November 24, 1975, Anderson's employees, including plaintiff, arrived at the construction site. Their job consisted of applying roofing material over a roof deck laid by Nielsen. The weather, however, was not suited to applying roofing, so Anderson's crew left before noon.

That same day Nielsen's employees were decking the eighty-eight by one hundred thirty-two foot roof of the new gymnasium. They placed Tectum boards upon metal joists previously constructed by Sahf. These Tectum boards were black on the topside and white on the bottom, measured 8′ × 32¼″ × 3″, and weighed one hundred pounds.

At 2:30 p. m. or thereabout, Nielsen's men reached a part of the roof where previously positioned angle irons indicated two 32¼″ × 36″ openings were to be left. After decking was completed beyond these openings, Nielsen's foreman covered them, one with a forty pound pallet, the other with a Tectum board. The pallet was not fastened down. No warnings were placed to mark the covered openings. Neither Sahf's nor Anderson's employees were present when this took place.

The next morning was sunny but chilly, and Anderson's crew arrived around 8 a. m. Although the decking, which covered roughly half the roof, was black, it was coated with frost and snow and appeared somewhat white. Various pieces of equipment, pallets, and other material belonging to the general contractor and subcontractors were situated on the roof.

Some of Anderson's employees began preparing the roof for rolling tar paper. Nielsen's employees, on the roof at the time, observed Anderson's employees near the covered holes. At approximately 9 a. m. plaintiff noticed a frost and snow-covered pallet that would have to be moved before paper could be rolled. Without examining it closely he picked up one end, began to shove it aside, and fell more than twenty-seven feet to the concrete floor below. He suffered severe and painful injuries and was taken to a Rochester hospital. Plaintiff admitted that he likely would have seen the hole had he looked through the slats in the pallet.

At no time was either plaintiff or Sahf's foreman informed that these openings were in place. Although Nielsen's foreman contended that he "jokingly" mentioned the holes to Anderson's foreman the morning of the accident, and, in passing the afternoon before, to a Sahf employee, these statements were controverted.

Over the course of the trial the jury also heard evidence relevant to proper safety

procedures under these circumstances and the allocation of responsibility among the various parties.

■ 1. Appellant Nielsen contends that the trial court erred by refusing to give proposed instructions that would specifically define the boundaries of each contractor's duty. While we seriously question whether the proposed instructions accurately reflect the law in this regard, even assuming that they do, we find no error.

Although it would be desirable and appropriate for the trial court to particularize the duties of a general contractor and his subcontractor, such a definition could not embrace all of the myriad variations of circumstances in these arrangements. We recognize that parties allocate responsibilities among themselves by agreement and practice. For this reason, courses of conduct and actual working relationships are probably better indicators of the respective duties of these parties than are "technical and arbitrary classifications [that often lead] to confusion in the law and inequity in the cases * * *." *Peterson v. Balach*, 294 Minn. 161, 166, 199 N.W.2d 639, 643 (1972). Here it was not error to allow the jury to sift through the facts of the case and measure them against the relatively understandable standard of reasonable care.

At the same time, however, we recognize that what is reasonable care for one party may be clear negligence for another. Consequently the parties in each case may develop and present theories peculiarly adapted to their circumstances. In this instance appellant Nielsen presented evidence and argued his theory to the jury. There was discussion of the customs and practices of the trade, the extent of the general contractor's obligation to coordinate the work and safety of the project, and the relative care of all parties involved. And while it is ordinarily better practice for the trial court to sharpen the issues for the jury by discussing the nature of the claims made, the omission of that description is not fatal here. Considering the evidence, the instructions as a whole, and the final arguments, it is clear that appellant's theory of the case was adequately set forth. *See Poppenhagen v. Sornsin Constr. Co.*, 300 Minn. 73, 81–82, 220 N.W.2d 281, 286 (1974).

■ 2. Appellant also claims that the evidence does not support the jury's verdict. In reviewing a jury's apportionment of negligence, as well as in our review of jury verdicts generally, the evidence and the inferences to be drawn from it must be viewed in the light most favorable to the verdict. It will not be disturbed unless it is manifestly and palpably contrary to the evidence. *Northern Petrochem. Co. v. United States Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn.1979); *Duchene v. Wolstan*, 258 N.W.2d 601, 605 (Minn.1977). Abundant evidence supports this verdict.

Affirmed.

TODD, J., took no part in the consideration or decision of this case.