489 A.2d 895

**Maryann OLSON, Appellant,**

v.

**WASHINGTON COUNTRY CLUB and Patricia D. Jessop, an individual.**

Superior Court of Pennsylvania.

Argued Dec. 19, 1984.

Filed March 8, 1985.

John P. Liekar, Jr., Cannonsburg, for appellant.

Wray, G. Zelt, III, Washington, for Washington, appellee.

W. Patric Boyer, Assistant District Attorney, Washington, for Jessop, appellee.

Before ROWLEY, OLSZEWSKI and POPOVICH, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment entered in a personal injury case. Appellant contends that the lower court 1) committed several errors in its charge to the jury; and 2)

erred when it failed to either grant a mistrial or remove a juror. We find appellant's arguments meritless and affirm the judgment.

The facts of this case may be quickly summarized. On July 16, 1979, a group of non-members held a golf outing at the Washington Country Club. The outing group brought along several women to drive golf carts containing beer, soda-pop, bloody marys, etc. One of these women invited appellant to come along. Appellee, Washington Country Club, is a nine-hole golf course. The course is bisected by a two lane asphalt public road which players are required to cross at two points: after hitting their drive on number one and after finishing number eight in order to get to the number nine tee.

The accident at issue occurred at the crossing to the number nine tee. One, Jan Bausman[1] took control of appellant's golf cart causing it to go onto the roadway and into, either the path of, or the side of, a motor vehicle operated by appellee, Patricia D. Jessop. Appellant commenced an action against both Ms. Jessop and the country club alleging that their negligence caused her injuries.

The jury's verdict in this case was in the form of answers to interrogatories.[2] In answer to question 1, the jury found that Washington Country Club was negligent, and that Ms. Jessop was not negligent. In answer to question 2, the jury found that the negligence of Washington Country Club was not a substantial factor in bringing about appellant's harm.

---

**1.** Suit papers were never properly served on Jan Bausman and the suit against him was dismissed before the trial began.

**2.** Questions 1 and 2 of the jury interrogatories stated:
Question 1:
Do you find that any of the defendants was negligent?

| | | |
|---|---|---|
| Defendant, Washington Country Club | Yes___ | No___ |
| Defendant, Patricia D. Jessop | Yes___ | No___ |

If you answer Question 1 "No" as to all defendants, the plaintiff cannot recover and you should not answer any further questions and should return to the courtroom.
Question 2:
Was the negligence of those defendants you have found to be negligent a substantial factor in bringing about the plaintiff's harm?

The trial court molded the verdict, immediately after it was rendered, to find in favor of both Washington Country Club and Ms. Jessop and against appellant. Judgment was entered following the denial of appellant's motion for a new trial. This appeal followed.

We will first address appellant's contentions regarding the lower court's jury charge.

■ Appellant first argues that the trial court erred in failing to instruct the jury that she was a business invitee, and as such, owed the highest duty of care of any entrant upon land. Appellant's requested points for charge on this issue were the following:

**Point 2.** The plaintiff, Maryann Olson, was a business invitee of the defendant, Washington Country Club's premises, and as such, she was not required to be on the alert to discover dangerous conditions which were not obvious or apparent. The defendant, Washington Country Club, on the contrary had an affirmative duty to keep its premises safe for the plaintiff, Maryann Olson, and to warn her of any potential hidden perils which it knew or should have known of, in the exercise of reasonable care.

**Point 3.** The defendant, Washington Country Club's duty of protection towards business visitors, such as the plaintiff, is the highest duty owed to any entrant upon land, and the defendant, Washington Country Club, was under an affirmative duty to protect the plaintiff, Maryann Olson, not only against those which, with reasonable care, it might discover, because the business visitor enters upon a land owner's premises with an implied assurance of preparation and reasonable care for her protection and safety while she is there.

The trial court rejected these points for charge, and instead, charged the jury in accordance with Pennsylvania suggested Civil Jury Instruction No. 7.00, as follows:

| | | |
|---|---|---|
| Defendant, Washington Country Club | Yes___ | No___ |
| Defendant, Patricia D. Jessop | Yes___ | No___ |

If you answer Question 2 "No" as to all defendants you have found to be negligent, the plaintiff cannot recover and you should not answer any further questions and should return to the courtroom.

An owner/occupier of land is required to use reasonable care in the maintenance and use of the property. If you find that he has failed in this regard, this is negligence which may make him liable for any resulting damage to one lawfully on the property. What is reasonable care depends on, and must be in keeping with, the use defendant expected to be made of the property.

(Pennsylvania, Proposed Jury Instructions, Civil No. 7.00 June 2, 1974) Appellant contends that she was prejudiced by the lower court's rejection of her requested points for charge and by the court's actual charge. We disagree. As stated earlier, the jury found the country club to have been negligent. Thus, the issues raised concerning the jury's charge as to the country club's duty of care are moot. We will not consider these issues further.[3] *Jones v. Montefiore Hospital,* 275 Pa.Super. 422, 432, 418 A.2d 1361, 1366 (1980).

▮ Appellant next alleges that the lower court erred in failing to 1) charge the jury regarding negligence *per se;* and/or 2) direct the jury to find the country club negligent *per se* because of an alleged violation of the Pennsylvania motor vehicle code. Here again, since the jury found the

3. Were this Court to hold on this issue, we would affirm the lower court's use of Pennsylvania's Proposed Jury Instructions, Civil No. 7.00.

This proposed instruction anticipates Pennsylvania joining the enlightened group of states who have abolished the common law distinctions between invitees, licensees and trespassers in determining the duty of care owed by a landowner to entrants upon property. *See Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968) and its progeny; 22 A.L.R.4th 294, 32 A.L.R.3d 508. These jurisdictions now require that the land possessor exercise reasonable care commensurate with the circumstances surrounding the use to which he has invited his property to be used. *See* W. Prosser, *Handbook of the Law of Torts,* (4th ed. 1971) at 180.

This Court believes that the distinctions between invitees and licensees have been diluted, dissipated, confused and fragmented to the point where they have largely lost their validity. However, we are not totally convinced that the same is true regarding the common law status of trespasser.

Therefore, we urge our Court, in an appropriate case, to abolish the classifications of licensee and invitee but preserve the common law status of trespasser. *See Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43 (1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972);

country club to have been negligent, these issues are also moot.

■ Appellant's third contention is that the lower court erred when, in response to a jury interrogatory, it defined "substantial factor" by way of two hypotheticals. Appellant claims that these hypotheticals were so similar to the instant case that the jury was swayed by the court's reasoning and could not render a fair verdict. The record reveals that appellant failed to object to the instruction when it was given. Therefore, we must consider this issue waived. *Crosbie v. Westinghouse Elevator Co.*, 297 Pa.Super. 304, 443 A.2d 849 (1982), *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

■ Appellant's last allegation regarding the jury charge is that the trial court erred in failing to instruct the jury that there can be more than one substantial factor in bringing about harm. Appellant's requested point for charge no. 4 stated:

> **Point 4.** There may be more than one substantial factor in bringing about the harm suffered by the plaintiff, Maryann Olson, when the negligent conduct of two or more persons contributes concurrently to an occurrence or incident, each of these persons is fully responsible for the harm suffered by the plaintiff, Maryann Olson, regardless of the relative extent to which each contributed to the harm.

The trial court charged the jury on this issue pursuant to Pennsylvania suggested Civil Jury Instruction No. 3.26 as follows:

> "There may be more than one substantial factor in bringing about the harm suffered by the plaintiff, when the negligent conduct of two or more persons contributes concurrently to an occurrence or incident, each of those persons is fully responsible for the harm suffered by the plaintiff, regardless of the relative extents to which each contributed to the harm. A cause is concurrent if it was

*O'Leary v. Coenen,* 251 N.W.2d 746 (N.D.1977); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1 (1975).

operative at the moment of the incident, and acted with another cause as a substantial contributive factor in bringing about the harm."

(Pennsylvania, Proposed Jury Instructions, Civil No. 3.26, March 30, 1978)

Obviously, the trial court read verbatim the standard jury instruction from which appellant drafted her own point for charge. Appellant's contention, therefore, is meritless.

Appellant's final contention is that the lower court should have either declared a mistrial or removed an empanelled juror because it was discovered that juror No. 11 had had conversations, during the trial, with a court administrator (who was a member of the appellee country club) and with the president of the country club.

The conversations complained of were brought to the attention of the trial court, and an investigation was conducted to determine the conversations' extent and nature. From this investigation, the lower court concluded that the communications were harmless and not grounds for a new trial.

The law concerning communications with jurors was summarized by this Court in *Printed Terry Finishing v. City of Lebanon*, 247 Pa.Super. 277, 372 A.2d 460 (1977). This court stated:

".... If, however, contact between an officer of the Court and a juror should occur, it is not required that the parties be curt or lacking in customary amenities or social intercourse..." *Pessin v. Keeneland Association*, 298 F.Supp. 593 (E.D.Ky.1969). Such contacts, however, must not be of such nature as to cast suspicion upon the integrity of the jury verdict. Thus, the Supreme Court of the United States, in *Mattox v. United States*, 146 U.S. 140 [13 S.Ct. 50, 36 L.Ed. 917] (1892), pronounced that:

'Private communications possibly prejudicial between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least *unless their harmlessness is made to appear.*' *Id.* at 150 [13 S.Ct. at 53].

We, therefore, agree with the statement of the Court in *California Fruit Exchange v. Henry*, 89 F.Supp. 580 (W.D.Pa.1950) that:

'The courts look with suspicion upon any communications between parties to a suit or their counsel and the jury in panel to try it, and if such communication is had and it appears that the conversation was had about the suit, or *the communication is not explained satisfactorily*, it will, in itself, be grounds for a new trial. If, *when explained*, however, it can be seen in the communication nothing was said about the case and nothing was done for the purpose of influencing the mind of the jury, and that the communication or conversation had no influence on the verdict which was reached, no ground exists to set the verdict aside for the reason that said comment could not have been prejudicial.' " (Emphasis supplied.)

(247 Pa.Superior Ct. at 299, 372 A.2d at 471)

■ In the instant case, the investigation revealed that the conversation between the juror in question and the court administrator dealt solely with the jury selection process, and in no way involved the trial. Further, the court administrator stated, under oath, that he never identified himself as a member of the country club. Finally, nothing in the record indicates that juror No. 11 was aware of the administrator's membership. We are satisfied that this conversation does not justify a new trial.

■ We turn now to the suspect juror's alleged conversation and past relationship with the president of the appellee country club. At the investigation, it was discovered that the country club president was a funeral director and further, that during the trial, juror No. 11 had visited the president's funeral home. However, additional testimony revealed that at no time did juror No. 11 discuss the case with the country club president.

The investigation also disclosed that a few members of the suspect juror's family had been buried from the country club's president's funeral home. However, appellant has

failed to convince this Court that a funeral-type relationship is sufficient to affect a juror's impartiality. Further, we note that appellant declined to have juror No. 11 interviewed under oath concerning this matter.

Applying the *Printed Terry Finishing* standards, we conclude that nothing in the record indicates any impropriety on the part of juror No. 11 or the individuals he apparently spoke with. Since *all* communications were satisfactorily explained and shown to have been harmless, we hold that the lower court properly denied appellant's motion for a new trial.

This Court finds all of appellant's arguments to be meritless. Accordingly, the judgment of the lower court is affirmed.

Judgment affirmed.

ROWLEY, J., files a concurring statement.

ROWLEY, Judge, concurring:

I JOIN in the majority's Opinion, with the exception of the views expressed in Footnote 3. I express no opinion on that issue. I deem it preferable to reserve an opinion until the issue is presented under circumstances where such a determination is necessary and the issue has been briefed and argued.