Rosemary MacBETH, et al.,
Respondent,

v.

Vernon MONDRY, d.b.a. Cannon River Speedway, Appellant,

James Hermel, Defendant.

No. CO–86–111.

Court of Appeals of Minnesota.

Aug. 12, 1986.

Randall C. Berkland, Blethen, Gage & Krause, Mankato, for respondent.

Henry A. Cousineau, Jr., Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Chtd., Minneapolis, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and FOLEY and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from an amended judgment entered for respondents Rosemary MacBeth and Gary Schaefer following the granting of their motion for judgment notwithstanding the verdict. The jury found appellant Vernon Mondry and defendant James Hermel not negligent. The court, in addition to granting judgment NOV, ordered a new trial in the event of a reversal of the judgment. We reverse.

## FACTS

Appellant Vernon Mondry bought the Cannon River Speedway in 1978 from defendant James Hermel, who built it beginning with the "first section" of the stands in 1973–4. On the evening of October 6, 1979, respondents Rosemary MacBeth, and her son, Gary Schaefer, who were at the speedway to participate as members of the crew of their husband and stepfather, Rex MacBeth, were injured when the "first section" of the grandstand, where they had gone to view the remaining races, collapsed. Respondents contend the footboard on which they stood collapsed because it was weakened by dry rot.

Hermel testified that two incidents of broken boards occurred during his ownership, although neither occurred in the "first" section. Mondry was informed of both incidents, and Hermel went over the entire facility with him before the sale. Hermel used metal saddles to reinforce those footboards he felt to be weak. To find such boards, he used a hammer to tap at the joint where the footboard was attached to the stringer, visually inspected the boards, and tested them with his own weight.

Hermel testified that the first section, unlike the others, was painted after construction. He stated there was no dry rot problem in that section, which appeared sound when he sold out to Mondry.

Mondry admits he was aware of the two prior incidents and realized more repair work had to be done when he bought the track. He made an inspection in the fall of 1978 and began repairs the following winter, reinforcing more boards with metal saddles and tearing out the section where he felt he had a problem with dry rot. Mondry conducted a visual inspection and tested the boards by jumping on them (he weighed 270 pounds). He did not assemble a group of people to simulate the weight of a number of people on each board.

Respondent's expert, John Carroll, visited the speedway in 1982, three years after the accident, measuring and photographing the bleachers. A sample from the footboard which collapsed was found to have no live fungus, but showed signs of deterioration which Carroll stated must have oc-

curred before the accident because the exhibit had since been kept enclosed.

Carroll gave his expert opinion that dry rot was the primary cause of the accident. He stated that a visual inspection for dry rot is adequate if the person inspecting the wood is familiar with the problem. He recommended, however, testing with an ice pick. Carroll stated that dry rot would cause breakage in the wood within 5 to 10 years of construction.

The night of the accident, Mondry had scheduled a special program and had a larger crowd than usual. MacBeth and Schaefer left the infield pit to watch the final races from the grandstand. It was a cold evening, with temperatures around 40 degrees. Before the final race, the track announcer asked the crowd to stand, and the foot board collapsed. Mondry's opinion was that the size of the crowd, and people bouncing on the board to keep warm, caused the accident.

The jury found both Hermel and Mondry not negligent, and assessed damages at $18,000 for MacBeth and $15,000 for Schaefer. The trial court granted judgment NOV, conditionally ordered a new trial and awarded costs and disbursements.

### ISSUES

1. Did the trial court err in granting judgment NOV for respondents?

2. Did the trial court abuse its discretion in conditionally ordering a new trial?

### ANALYSIS

*1. Judgment notwithstanding the verdict*

 Judgment notwithstanding the verdict

> may be granted only when the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome.

*Lamb v. Jordan,* 333 N.W.2d 852, 855 (Minn.1983). In applying this standard, the trial court must: 1) consider all the evidence, including that favoring the verdict;

2) view the evidence in the light most favorable to the verdict; and 3) refrain from weighing the evidence or judging the credibility of the witnesses. *Id.*

 The trial court in its memorandum accompanying the order set out the facts supporting its conclusion that Mondry was negligent. These focused on Mondry's knowledge of the condition of the stands and his efforts to inspect and repair them. The supreme court in *Peterson v. Balach,* 294 Minn. 161, 174 n. 7, 199 N.W.2d 639, 648 n. 7 (1972), identified the factors governing landowner liability:

> * * * the circumstances under which the entrant enters the land (licensee or invitee); foreseeability or possibility of harm; duty to inspect, repair, or warn; reasonableness of inspection or repair; and opportunity and ease of repair or correction.

The trial court's post-trial memorandum properly focused on the foreseeability of harm and the reasonableness of Mondry's inspection and repair. The court, however, failed to view the evidence in the light most favorable to the verdict. *Lamb v. Jordan,* 333 N.W.2d at 855.

The trial court's analysis does not distinguish section one, on which respondents were injured, from the rest of the bleachers. Viewed in the light most favorable to the verdict, the evidence showed there had been no incidents of collapsing boards in section one, neither Hermel nor Mondry had any reason to believe there was dry rot in section one, and a sample sent to the Waseca campus lab had shown no dry rot.

The trial court's analysis also failed to view the expert's testimony in the light most favorable to the verdict. Carroll did not state that tapping boards was an unacceptable method of testing for dry rot, nor that testing board strength with Mondry's own weight was inadequate, nor that Mondry should have consulted an engineer. Carroll gave his opinion that dry rot was the primary cause of the accident, but gave no specific opinion on the reasonableness of Mondry's methods of inspection, testing and repair.

Although dry rot was shown to have caused the accident, proof of a defect does not dispense with proof of negligence, as strict liability does not apply to a landowner.

The trial court instructed the jury on the doctrine of res ipsa loquitur. Res ipsa loquitur, however, only permits an inference of negligence. *Holten v. Parker*, 302 Minn. 167, 173, 224 N.W.2d 139, 144 (1974). The jury was not required to find either Mondry or respondents negligent.

There was evidence that the dry rot on the board could have been discovered by a reasonable inspection, but it was not so overwhelming that reasonable minds could not differ. Mondry testified to his methods of inspection and repair. Given that section one had been free of dry rot, and had not shown serious structural problems, the reasonableness of those methods presented a jury issue.

### 2. New trial

Respondent contends the order conditionally granting a new trial is not appealable. *See* Minn.R.Civ.App.P. 103.03(d) (order granting a new trial for errors of law is appealable). The supreme court, however, has customarily reviewed such orders where appeal is taken from the granting of judgment notwithstanding the verdict. *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 407 (Minn.1981); *McCormack v. Hankscraft Co.*, 278 Minn. 322, 154 N.W.2d 488, 502–03 (1967).

Unlike a motion for judgment NOV, the motion for a new trial

> presents a factual question, where the reviewing judge may properly weigh the evidence.

*Lamb v. Jordan*, 333 N.W.2d at 855. A new trial is to be granted if

> the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice * * * *.

*Id.* at 855–56.

 We disagree with the trial court's conclusion that the verdict was contrary to the preponderance of the evidence. The key issue, considering the factors identified in *Peterson v. Balach*, 199 N.W.2d at 648, was whether Mondry's methods of inspection and repair were reasonable. It is undisputed that Mondry did inspect the stands and repair those boards found to be weakened. The fact that one of the boards collapsed from dry rot did not impel the jury to conclude that Mondry was negligent. Without expert testimony that Mondry's methods of inspection and repair were inadequate, the jury could reasonably conclude that the accident could have occurred without negligence on the landowner's part.

### DECISION

The trial court erred in granting judgment NOV. The conditional order granting a new trial was an abuse of discretion. The jury verdict is reinstated.

Reversed.