JOB v. GRAND TRUNK WESTERN RAILWAY CO.

1. Pleading—Misnomer Amendable Where Right Party Sued—Corporations.

    Under 3 Comp. Laws 1915, § 12478, the court has authority to amend the misnomer of a corporation in a declaration, where the right corporation was sued and service was had on its treasurer.

2. Railroads—Party Legally Responsible—Evidence—Sufficiency.

    In an action against a railroad company for personal injuries, evidence *held*, sufficient to take to the jury the question as to whether defendant was the party legally responsible for said injuries, as against its claim that another company was operating the railroad at the time of the accident.

3. Appeal and Error—Overwhelming Weight of Evidence—Jury Judges of Facts.

    Where, in an action against a railroad company for personal injuries, there was ample testimony to support the verdict in

favor of plaintiff, it cannot be said to be against the over-
whelming weight of the evidence, although the testimony was
in irreconcilable conflict, since the jury are judges of the facts.

4. EVIDENCE—HOSPITAL RECORDS INADMISSIBLE IN ABSENCE OF
STATUTE.
In the absence of statute, hospital records are, as a rule, not
admissible as evidence of the facts therein stated.

5. SAME—RECORDS MADE BY OTHERS THAN THOSE EXAMINING PA-
TIENT INADMISSIBLE.
Hospital records made by others than those examining the
patient are inadmissible, and records made in part by a
physician and in part by others, not produced, are not
admissible.

6. SAME—WHEN WRITTEN MEMORANDA ADMISSIBLE.
To be admissible, written memoranda must be made contempo-
raneously with the facts to which they relate.

7. SAME—HOSPITAL RECORD AS OFFERED HEARSAY.
A hospital record of plaintiff's case, offered in evidence by a
witness under whose supervision it was kept, but with the
making of which he had nothing to do, and who had no knowl-
edge of the case except as shown by the record, was properly
rejected since the record as offered was hearsay.

8. SAME—UNAUTHENTICATED TRANSCRIPT OF TESTIMONY GIVEN ON
PREVIOUS TRIAL PROPERLY EXCLUDED.
A transcript of the testimony of a witness, now out of the State,
given on a previous trial of the same case, which was not
authenticated, was properly excluded.

Error to Wayne; Carr (Leland W.), J., presiding.
Submitted October 16, 1928. (Docket No. 68, Cal-
endar No. 33,949.) Decided January 7, 1929.

Case by Anthony Job against the Grand Trunk
Western Railway Company for personal injuries.
Judgment for plaintiff. Defendant brings error.
Affirmed.

*H. R. Martin* (*Leo J. Carrigan* and *George J.
Cooper,* of counsel), for appellant.

*Daniel H. Cronin* and *Bresnahan & Groefsema,* for appellee.

POTTER, J.   Plaintiff began suit January 14, 1925, by declaration and rule to plead, against the Grand Trunk Railway Company to recover damages from injuries claimed to have been sustained in a crossing accident in the city of Hamtramck, October 19, 1924. The sheriff's return showed service on W. C. Tomkins, treasurer of the Grand Trunk Company.   January 30, 1925, the Canadian National Railway Company filed a plea of the general issue.   October 5, 1925, application was made by plaintiff to make the Grand Trunk Railway Company of Canada, the Detroit, Grand Haven & Milwaukee Railway Company, the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company, the Grand Trunk Railway System, and the Detroit & Canada Grand Trunk Junction Railway, parties defendant, which application was granted, the court directing process to be issued against each of them.   Service was made on M. J. Broderick, chief clerk of all the above-named railways.   October 23, 1925, the Canadian National Railway Company appeared.   It said the Grand Trunk Railway Company of Canada was amalgamated with other corporations January 31, 1923, under the name of Canadian National Railway Company; that there was no such corporation as the Grand Trunk Railway Company of Canada; that as successor by such amalgamation the Canadian National Railway Company was the lessee of the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company; and that the Grand Trunk Railway System was not a corporation, but a trade-name used to designate several affiliated companies.   The Detroit, Grand Haven & Milwaukee Railway Company

and the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company appeared. January 14, 1925, plaintiff filed an amended declaration against all the defendants above named. December 29, 1927, a motion was made by plaintiff to amend the declaration so as to read in the plural number instead of the singular, and this motion was allowed. On the same day a motion was made to amend the name of the defendant named in the declaration as the Grand Trunk Railway Company, a corporation, so as to read the "Grand Trunk Western Railway Company, a corporation," and to amend the return of process so as to show service of the declaration and rule to plead on the Grand Trunk Western Railway Company in the place and stead of Grand Trunk Railway Company. This motion was, on January 9, 1928, granted, whereupon the Grand Trunk Western Railway Company filed exceptions to the action of the court in naming it a defendant against its objections, for the reason there was no showing of service upon it prior to the running of the statute of limitations, and it had not previously entered its appearance in said cause. On January 17, 1928, the Grand Trunk Western Railway Company, the Detroit, Grand Haven & Milwaukee Railway Company, and the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company, filed a plea of the general issue. The Chicago, Detroit & Canada Grand Trunk Junction Railroad Company gave notice it would insist, in its defense under the general issue, its railroad and property were under lease to the Canadian National Railway Company, successor by amalgamation to the Grand Trunk Railway Company of Canada, and said property and railroad were under lease and not operated by it at the date of the accident described in plaintiff's declaration. May 1,

1928, the cause came on for trial before the court
and a jury, and resulted in a verdict of $10,000 for
plaintiff against defendant Grand Trunk Western
Railway Company, whereupon plaintiff made a mo-
tion that the verdict directed against the plaintiff in
favor of the Canadian National Railway Company,
and the Chicago, Detroit & Canada Grand Trunk
Junction Railroad Company be set aside and a judg-
ment entered against said defendants on the verdict
of May 3, 1928, because, by the admission of counsel
for the Canadian National Railway Company, it was
one of the owners and operators of the engine mov-
ing the cars resulting in plaintiff's injuries, and the
evidence showed the Chicago, Detroit & Canada
Grand Trunk Junction Railroad Company was re-
quired by the State to lower the gates where car
movements were made at the crossing of its tracks
with Conant avenue in the city of Hamtramck, which
duty it failed to perform at the time plaintiff was
injured, which failure was one of the proximate
causes of the accident. Plaintiff asked, if this mo-
tion was denied, that a new trial be granted as
against the Canadian National Railway Company,
and the Chicago, Detroit & Canada Grand Trunk
Junction Railroad Company for the reasons set
forth therein. Plaintiff excepted the Grand Trunk
Western Railway Company and claimed to make the
same without waiver of any rights against the Grand
Trunk Western Railway Company, moving solely
against the Canadian National Railway Company
and the Detroit & Canada Grand Trunk Junction
Railroad Company. Judgment was entered for
plaintiff against defendant Grand Trunk Western
Railway Company upon the verdict May 3, 1928.
June 23, 1928, the defendant Grand Trunk Western
Railway Company brought on for hearing a motion

for a new trial, which motion was overruled by the court, whereupon defendant assigned 25 errors grouped under 5 heads:

*First.* The Grand Trunk Western Railway Company was not properly before the court as a defendant on the second trial for the reason it was error for the circuit judge to grant the order of January 7, 1928, making it a party; and because there was an order of dismissal on February 20, 1928, during the first trial, dismissing the suit as to the Grand Trunk Railway Company, and this constituted a dismissal of the suit as against the Grand Trunk Western Railway Company.

*Second.* The court was in error in holding the Grand Trunk Western Railway Company to be the party defendant legally responsible if there was any liability; defendant claiming the verdict should have been directed in favor of the Grand Trunk Western Railway Company because the responsible party defendant, if any, was the Canadian National Railway Company.

*Third.* The verdict was against the overwhelming weight of the evidence, and defendant's motion for a new trial should have been granted.

*Fourth.* The court erred in excluding from evidence the records of Grace hospital alleged to indicate plaintiff had an alcoholic breath when brought to the hospital after the injury; and

*Fifth.* The court erred in excluding the transcript of the testimony of the towerman given on the previous trial.

The case was submitted here at the October, 1928, term. Afterward a motion was made in the circuit court to correct the calendar and journal entries of February 20, 1928, indicating the cause was dismissed as to the Grand Trunk Railway Company, and the circuit court entered an order amending said calendar and journal entries by striking the same, whereupon a motion was made here October 29,

1928, to amend the record by incorporating therein the order of the circuit court correcting said calendar and journal entries, and asking, if the same was denied, that the record be remanded to the clerk of the circuit court of Wayne county with instructions to return to this court a true and corrected record of the calendar and journal entries in the office of the clerk for the circuit court. This motion was noticed for November 6, 1928, and, no opposition being made thereto, was granted. This eliminates the errors assigned upon the proceedings subsequent to the order of February 20, 1928, dismissing the suit as to the Grand Trunk Railway Company, which it was claimed constituted a dismissal as to the Grand Trunk Western Railway Company.

1.   Was the Grand Trunk Western Railway Company properly before the court as a defendant? The original declaration was against the Grand Trunk Railway Company, a corporation. The return of the sheriff shows it was served on W. C. Tomkins, treasurer of the Grand Trunk Company. W. C. Tomkins was treasurer of the Grand Trunk Western Railway Company. If the suit had proceeded to judgment against the Grand Trunk Railway Company, such judgment would have been *res judicata* of a subsequent suit against the Grand Trunk Western Railway Company. *Youngblood* v. *Railway Co.*, 239 Mich. 136. This court has approved the rule laid down in 31 Cyc. p. 487, as follows:

"As a general rule, under the statutes, a misnomer of a plaintiff or defendant is amendable unless the amendment is such as to effect an entire change of parties. But where the right corporation has been sued by the wrong name and service has been made upon the right party, although by a wrong name, an amendment substituting the true name of the corporation may be permitted."

See, also, *Daly* v. *Blair,* 183 Mich. 351; *Parke, Davis & Co.* v. *Railway System,* 207 Mich. 388; *Youngblood* v. *Railway Co., supra.* The court had authority, under the statute (3 Comp. Laws 1915, § 12478), to grant the amendment.

2.   Was the court in error in holding the Grand Trunk Western Railway Company legally responsible, defendant claiming the verdict should have been against the Canadian National Railway Company, if anyone?

Defendant's witness John Keleher testified:

"I am an employee of the Grand Trunk Railway System.   I was in their employ on October 19, 1924. * * * On October 19, 1924, I was yard conductor with the Grand Trunk Railway System. * * * On October 19, 1924, I was working for the Grand Trunk.

"*Q.*   What do you mean by 'Grand Trunk'?

"*Mr. Geer:*   Your honor, I object to that; if it is for the purpose of binding any one railroad, why, this man is not the proper party for cross-examination.

"*The Court:*   We will take the answer.

"*A.*   I just mean it is Grand Trunk.   That is on our pay check, is 'Grand Trunk' and I got a Grand Trunk book of rules and I am working for the Grand Trunk.   That is all I know.   I don't carry my book of rules down here.   They are in my working clothes. I have no necessity for them here.   (A book produced was thereupon marked 'Exhibit 7' by the reporter.   Exhibit 7 is apparently a Grand Trunk Railway book.)

"*Mr. Geer:*   No objection.

"*The Court:*   Do you offer the exhibit?

"*Mr. Bresnahan:*   Not at this time, your honor.

"As near as possible all of the rules of the Grand Trunk were observed that day on this particular switching movement.   I am familiar with Rule 102

of my road. That rule has nothing to do with that day. On the 24th of October I was not working for the Canadian National Railway. I was working for the Grand Trunk.    *    *    *

"*A.*    Man, I don't know. I hired out for the Grand Trunk Railway, my check is signed 'Grand Trunk,' and the rule book is Grand Trunk. Now, what am I supposed to know; I ain't a lawyer. I don't go to all the trouble to find out all inside and outside where I am working. I am getting paid for what I do.

"*The Court:*    That is enough."

Defendant's witness **Isaac J.** Heath testified as follows:

"I am employed by the Grand Trunk Railway System. I was employed by them on October 19, 1924. At that time I was engineer.    *    *    *

"*Q.*    I will ask you, Mr. Heath, who you are working for?

"*A.*    So far as I know, the Grand Trunk.

"*Q.*    Did you ever hear of the Canadian National Railway?

"*A.*    Well, yes.

"*Q.*    Are you working for them?

"*A.*    Well, all I know is Grand Trunk on the pay check.

"*Q.*    That is the thing you are principally interested in, is the pay check?

"*A.*    Every two weeks, yes.

"*Q.*    Well, have you ever seen the name of Canadian National Railway on that pay check that you get?

"*A.*    No, I never did.

"*Q.*    Did you get the same sort of check, the same printing on it and the same names—

"*A.*    Yes, but I think the paper is a little different shade of color at times.

"*Q.*    Did you ever get hold of a pink pay check?

"*A.*    Well, I couldn't just recall as to that.

"*Q.* I see. Now, are you sure you never got a pay check from the Canadian National Railway?

"*A.* Well, I am quite sure.

"*Q.* Did you ever work for the Canadian National Railway?

"*A.* Well, as I say, so far as I know, I am working for the Grand Trunk.

"*Q.* Well, did you ever hear of a railroad called the Canadian National Railway?

"*Mr. Geer:* Your honor, I object to this line of questioning.

"*A.* Yes, I have heard about it.

"*The Court:* The answer may stand.

"*Q.* Have you ever worked for them?

"*A.* Not that I know of."

Defendant's witness Ray Wells testified as follows:

"I am in the employ of the Grand Trunk Railway System. I was employed by them on October 19, 1924, in the capacity of yardmaster. * * * I am working for Grand Trunk, and was on the 19th of October, 1924.

"*Q.* Grand Trunk what?

"*A.* Grand Trunk Railway System.

"*Q.* Were you working for the Canadian National?

"*A.* Not to my knowledge.

"*Q.* On that day?

"*A.* Not to my knowledge.

"*Q.* Not to your knowledge?

"*A.* No, sir. * * *

"*Q.* And did you ever work for the Canadian National Railway System or Railway Company?

"*A.* Not to my knowledge.

"*Q.* Has the Canadian National Railway Company got a railroad in Detroit?

"*A.* Not to my knowledge.

"*Q.* And you are pretty familiar with the different divisions of the Grand Trunk, are you?

"*A.* In the western lines.

"*Q.* On the western lines?

"*A.* Yes, sir.

"*Q.* West of the Detroit river?

"*A.* Yes, sir.

"*Q.* And west of St. Clair river?

"*A.* Yes, sir.

"*Q.* Did you ever hear of the Canadian National Railway Company operating any trains on any road or any portion of the Grand Trunk System west of the Detroit river?

"*A.* No, sir.

"*Q.* They don't do that?

"*A.* Not to my knowledge.

"*Q.* Do you know who the attorneys for the Canadian National Railway System are?

"*A.* No, sir.   *   *   *   I think I hired out to the Grand Trunk Western Railway. That is the company I hired out to.

. "*Q.* Well, then, it is not the Grand Trunk Railway System you are working for. It is the Grand Trunk Western?

"*A.* What would be the difference?

"*Q.* I am asking you now if you are working for the Grand Trunk Western or Grand Trunk Railway System?

"*A.* Well, I don't know as—

"*Q.* You hired out for the Grand Trunk Western?

"*A.* Yes, I believe the application does say 'Grand Trunk Western.'

"*Q.* You have never been discharged or quit your job with the Grand Trunk Railway, and you still are working for them and have been for seventeen years?

"*A.* I wouldn't say that I have been hired by them; but I haven't been fired by them.

"*Q.*  Well, you are still working for them, aren't you?

"*A.*  Yes, sir.

"*Q.*  Grand Trunk Western?

"*A.*  Yes, sir.

"*Q.*  Yes, sir.

"*A.*  I suppose.

"*Q.*  And Keleher here works for the Grand Trunk Western, too, doesn't he?   *   *   *

"*The Court:*  Take the answer if he knows.

"*A.*  I suppose he works for the Grand Trunk Western, yes, sir.

"*Q.*  Well, he is working for the Grand Trunk Western?

"*A.*  So far as we know.

"*Q.*  And he has been working for them for five years, has he?

"*A.*  Approximately that.

"*Q.*  And who does Heath work for—Grand Trunk Western?

"*A.*  We all work for the Grand Trunk Western, yes, sir.   *   *   *

"*Q.*  And the Grand Trunk Western Railway have large engines with names 'Grand Trunk Western' printed in big white letters on the tender, haven't they?

"*A.*  Yes, sir."

This testimony was sufficient to bring the case within the rule of *Brandt* v. *C. F. Smith Co.,* 242 Mich. 217.

3. Was the verdict against the overwhelming weight of the evidence? The testimony, both of the plaintiff and of the person who accompanied him at the time of injury, was directly opposed to that of the witnesses for defendant. The plaintiff was corroborated by another witness. The facts were in dispute; the testimony in irreconcilable conflict. The jury were judges of the facts. There was ample testimony to support the verdict.

4.   Did the court err in excluding the evidence of the records of Grace hospital? The witness, Engelbach, sworn by defendant, produced a record from Grace hospital purporting to be of the doctor's orders, all laboratory work, the examination of the patient by the interne, progress notes on the patient, and, one week,—the temperature and pulse respiration chart,—and the record for one week of the nurse's notes. It does not appear by whom this record was made. It was signed by Doctor Schroeder. The witness had nothing to do with making the report, and was not connected with the hospital at the time the memorandum was made. The record was one kept in the ordinary course of business, was under the supervision of witness at the trial, having been turned over to him the day before. The witness did not claim to know anything about the case except as shown by the record. In the absence of statute, hospital records are, as a rule, not admissible as evidence of the facts therein stated. 22 C. J. p. 902. Records made by others than those examining the patient are inadmissible (*Meyer* v. *Railroad Co.,* 152 N. Y. App. Div. 709 [137 N. Y. Supp. 529]), and records made in part by a physician and in part by others, not produced, are not admissible (*Levy* v. *Mott Iron Works,* 143 N. Y. App. Div. 7 [127 N. Y. Supp. 506]). To be admissible, written memoranda must be made contemporaneously with the facts to which they relate. *Ribas* v. *Revere Rubber Co.,* 37 R. I. 189 (91 Atl. 58). The hospital records were written memoranda, and, as offered, hearsay. *Caldwell* v. *Bowen,* 80 Mich. 382. The court properly, refused to admit the testimony.

5.   Was the court in error in excluding the transcript of the testimony of the towerman given on the previous trial? At the time of the trial under consideration, he was out of the State. The defendant

offered in evidence what purported to be a transcript of the testimony, on the previous trial, of the towerman at the crossing. The testimony was not authenticated and was properly excluded. *Toohey v. Plummer*, 69 Mich. 345.

Judgment affirmed, with costs.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.