JOHN S. WADENA v. LORRAINE A. BUSH.
BYRON DEEGAN, THIRD-PARTY DEFENDANT.
DAVID DEEGAN, A MINOR, BY CHARLES DEEGAN,
HIS FATHER AND NATURAL GUARDIAN AND
GUARDIAN AD LITEM, v. LORRAINE A. BUSH.
JOHN S. WADENA AND ANOTHER,
THIRD-PARTY DEFENDANTS.

232 N. W. 2d 753.

August 15, 1975—No. 45135.

*Cousineau, McGuire, Shaughnessy & Anderson* and *Robert J. McGuire,* for appellant.

*Robert A. Nicklaus,* for respondent Wadena.

*Charles J. Lindberg,* for respondent Byron Deegan.

*Johnson & Ildstad* and *Paul Owen Johnson,* for respondent David Deegan.

Heard before Peterson, Todd, and Knutson, JJ., and considered and decided by the court en banc.

KNUTSON, JUSTICE.*

This is an appeal by defendant and third-party plaintiff, Lorraine A. Bush, from an order for judgment and order denying

---

*Retired Chief Justice acting pursuant to Minn. St. 2.724.

her motion for judgment n. o. v. or, in the alternative, for a new trial[1] in an automobile accident case.

John S. Wadena and David Deegan were passengers in a vehicle owned by John S. Wadena and driven by Byron Deegan which collided with a vehicle owned and driven by Mrs. Bush.

John Wadena commenced an action against Lorraine Bush, who then sought contribution from third-party defendant Byron Deegan. David Deegan commenced a separate action against Mrs. Bush, who sought contribution from third-party defendants John Wadena and Byron Deegan. Byron Deegan and John Wadena also counterclaimed against Mrs. Bush. All claims were consolidated for trial to a jury.

In answer to special interrogatories, the jury found that 55 percent of the total negligence of the drivers was attributable to Mrs. Bush and 45 percent to Byron Deegan. The jury also determined the amount of damages suffered by each of the parties involved in the consolidated trial. Based thereon, the court computed the amount recoverable by each and judgment was entered accordingly. No one has raised any issue as to the correctness of these computations, so we may accept them as correct on this appeal. Consequently, the amount of the recovery is not involved here.

The accident out of which this action arose occurred on April 29, 1969, at approximately 12:30 a.m. near the intersection of Franklin and Pillsbury Avenues in Minneapolis. Franklin Avenue is a through street, 48 feet wide at the point of the accident. Entry to Franklin Avenue from Pillsbury in either direction is protected by stop signs. Pillsbury Avenue does not cross Franklin in a straight line but on the north side of Franklin is about 75 feet farther east than it is on the south side. In order to better understand the layout of these avenues, a copy of defendant David Deegan's Exhibit A is attached hereto.

---

[1] The order for judgment is a nonappealable order. Rules of Civil Appellate Procedure, Rule 103.03. That part of the post-trial order which denied the motion for a new trial is appealable. Rule 103.03(e).

Weather conditions were good and the roads were dry at the time of the collision. Mrs. Bush with her passenger, Diane Lee Christopherson, was driving in a westerly direction on Franklin intending to make a left turn to go south on Pillsbury. The vehicle driven by Byron Deegan and carrying John Wadena and David Deegan as passengers was headed east on Franklin. At the time of the accident the jury could find that the Deegan vehicle was probably traveling at a speed somewhere between 20 and 30 miles per hour, although there is some evidence to indicate that it may have been traveling faster than 30 miles per hour, which was the maximum speed limit in the area.

The jury could also find that the accident occurred because Mrs. Bush's vehicle was traveling in the wrong lane on Franklin Avenue. She testified that she was in the proper lane, had barely begun her turn onto Pillsbury, and had not crossed the centerline at the time of the collision. She also testified that she had her left-turn signal light on.

There was also some evidence to support a finding that the Deegan vehicle was traveling without headlights. Mrs. Bush claimed she did not see the other vehicle prior to the accident. A noninterested witness, who was traveling west on Franklin behind Mrs. Bush and turned on Pillsbury to go north, did not see the headlights of the Deegan vehicle, although he observed the area immediately preceding the collision. Byron and David Deegan testified that the headlights of their vehicle were on.

All of the persons involved in the accident admitted drinking intoxicating liquor on the evening prior to the collision. Mrs. Bush admitted drinking part of three drinks over the course of the evening. Diane Christopherson admitted having four or five drinks. The Deegans, John Wadena, and another friend consumed a six-pack of malt liquor that evening, but contended it was approximately five hours prior to the accident. Byron Deegan admitted having had two cans. John Wadena admitted having a can or two and two shots of whiskey. Another friend apparently had some of the malt liquor. Beer and beer cans were

found in the Deegan vehicle after the crash, including an open can of malt liquor.

Respondents introduced into evidence Hennepin County General Hospital emergency room records. At the pretrial hearing the trial court granted the motions of respondents to delete from the records certain references to the alleged intoxication of respondents. Specifically, the trial court deleted an entry in a space on the hospital records for David Deegan—apparently provided for the use of "police"—which contained the word "drunk" and an entry in a space provided for "type of accident" which contained the words, "Disorderly conduct car vs. car." On the hospital record of Byron Deegan the words: "drunk," "unable to give history because of stupor," and "apparently intoxicated" were deleted, and on the record of John Wadena under the blank provided for "diagnosis" the word "Drunk" was deleted. Although it does not appear as part of the pretrial hearing nor do we find it on the hospital records, Mrs. Bush now argues that the trial court also deleted from the records the results of a blood alcohol test administered to John Wadena which showed his blood alcohol level to be .23 percent. The trial court noted prior to counsel's argument to the jury that the results of the test were irrelevant and not to be taken into account in a civil matter. Although the trial court did not specify the basis of its rulings, the motions made by respondents were grounded on the theories that the evidence was prejudicial, hearsay, without foundation, and beyond the scope of the Uniform Business Records as Evidence Act because it did not relate to medical treatment.

The appeal presents two questions, but the main thrust of appellant's argument relates to the question of whether the trial court erred in excluding references in hospital records admissible under Minn. St. 600.02 of the Uniform Business Records as Evidence Act, relating to David and Byron Deegan and John Wadena as being "drunk," "intoxicated," and in a "stupor" on the night in question and excluding John Wadena's blood alcohol reading, which, it is claimed, was contained in the same records.

The only other question involved is whether the trial court erred in refusing to instruct the jury on Minn. St. 169.14, subd. 3.

Mrs. Bush argues that the trial court erred in deleting the portions of the records relating to the intoxicated condition of the parties in the Deegan automobile. She argues that it should have been admitted to show the negligence of the driver, Byron Deegan, and to show that the observations of passengers John Wadena and David Deegan might have been impaired on account of their intoxication. She also argues that the entries should have been admitted for impeachment purposes.

Minn. St. 600.02 of the Uniform Business Records as Evidence Act, under which the hospital records were admitted, constitutes an exception to the hearsay rule and permits the admission into evidence of certain records made in the ordinary course of business. It states:

"A record of an act, condition, or event shall, *in so far as relevant*, be competent evidence *if the custodian or other qualified witness testified to its identity and the mode of its preparation*, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission." (Italics supplied.)

Respondents contend that the trial court properly excluded the evidence for three reasons. First, the hospital entries were not medically relevant and thus were not within the scope of the Uniform Business Records as Evidence Act. Second, there was no proper foundation for the admission of the entries. Third, the method by which John Wadena's blood sample was taken violated his constitutional rights.

This court has long taken the position that hospital entries are made within the regular course of business of the hospital under Minn. St. 600.02 only if they are germane to medical history, diagnosis, or treatment. For the purposes of this rule it does not

matter whether the records are offered by plaintiff or defendant or whether they are introduced as substantive evidence or for impeachment. In its most recent discussion of that general rule, Lindstrom v. Yellow Taxi Co. 298 Minn. 224, 232, 214 N. W. 2d 672, 678 (1974), this court said:

"In order to have the hospital records admitted either as substantive evidence or for impeachment, the defendant must show that the hospital record is admissible to prove that the statement was made by the patient. This is a matter of applying the rule pertaining to records kept in the regular course of business, and the primary issue is whether or not the specific entry involved was an entry made in the regular course of the hospital's business. If the entry concerns matters which under hospital practice are regarded as germane to medical history, diagnosis, or treatment, it is within the regular course of business. If, on the other hand, the entry does not relate to such subjects, it is not admissible even for the limited purpose of proving that the statement was made. * * *

"Hospital records are considered within the purview of the business-records exception if they are made in the regular course of business. Entries made in a hospital record are made in the regular course of business if they are germane to medical history, treatment, or diagnosis."

Though this court has had numerous opportunities to deal with the general question of whether entries in hospital records are germane to medical history, treatment, or diagnosis,[2] it has never considered this issue with respect to entries regarding intoxication. In the one reported Minnesota case involving such

---

[2] Although the Lindstrom case did expand the scope of this rule, the rule has been followed by the court for a number of years. Roeder v. North American Life Ins. Co. 259 Minn. 168, 106 N. W. 2d 624 (1960); Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. 2d 30 (1956); Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. 2d 688 (1954). See, also, Raycraft v. Duluth, M. & I. R. Ry. Co. 472 F. 2d 27 (8 Cir. 1973) (applying Minnesota law).

observations in a hospital record, the court had no opportunity to reach this question as the records were ruled inadmissible on the grounds of privilege. See, Ost v. Ulring, 207 Minn. 500, 292 N. W. 207 (1940).[3]

Only one Minnesota case under the Uniform Business Records as Evidence Act presents a fact situation at all similar to that of the case at bar. Flemming v. Thorson, 231 Minn. 343, 43 N. W. 2d 225 (1950), was a civil action arising out of an automobile accident. One of the defendants attempted to introduce into evidence the records of the hospital emergency room, which records contained the notation "HOLD FOR POLICE," in order to establish contributory negligence. The trial court ruled the evidence inadmissible. The evidence showed that plaintiff had been drinking, and his possible intoxication was apparently a basis for the contributory negligence issue. While the decision does not say that the intoxication of the plaintiff was the reason for the notation on the record, it seems fair to surmise that there was some such connection. This court held that the trial court had properly excluded the record, stating:

"We hold that under the facts and circumstances here the records were not admissible with the notation stamped thereon to the effect that plaintiff was to be held for the police. Our reasons are (1) that there was no showing that the notation 'HOLD FOR POLICE' was made in the regular course of business or that it pertained to the business of hospitalization and recording acts, transactions, occurrences, or events incident to the treatment of the patient; and (2) that the notation on the record was in no way germane to the condition for which plaintiff was hospitalized and was being treated. Here, we have a situation where one part of the hospital record pertained to the treatment the patient received for his injuries and the other part referred to

---

[3] It should also be noted that the cause of action arose and was litigated before the Uniform Business Records as Evidence Act was passed.

holding the patient for the police, a matter which had nothing to do with the physical condition of plaintiff and which could only tend to create a prejudicial feeling as to him so far as the jury was concerned. As was said in Commonwealth v. Harris, 351 Pa. 331, 41 A. (2d) 691, '*Hospital* business and *police* business are two different things.'" 231 Minn. 349, 43 N. W. 2d 229.

Flemming may be distinguishable from the case at bar on the facts. Here, the notations on the record are arguably germane to medical history, diagnosis, or treatment. In fact, counsel for Mrs. Bush made an offer of proof in an attempt to establish their contention that the emergency room personnel needed to know whether respondents were intoxicated in order to render proper treatment. Defendant Bush called Dr. Robert L. Meller for cross-examination under the rules. His connection with the parties does not appear from the record. The gist of Dr. Meller's testimony was that if a patient is brought into an emergency room in shock, it would be germane to treatment to know whether that patient was intoxicated. The combination of alcohol and shock, he said, could cause respiratory failure and death, and thus it could become necessary to administer a respiratory stimulant to such a patient. He also testified that if the patient merely needed to have facial lacerations stitched up, the amount of alcohol in his system would not be medically relevant. There was even some indication that his earlier comments applied only when the patient had been admitted in an unconscious condition. His final statements were:

"Q You are assuming that he is unconscious and you have to start from there?

"A Yes, that he'd come in—

"Q (Interrupting) Yes.

"A (Continuing) —in shock and in bad shape and you had to do something about it.

"Q If he is conscious and you are going to stitch up his face and forehead, whether he has got a high degree of alcohol or not, won't make any difference.

"A    At that point."

The evidence as to the condition of the respondents when admitted to the hospital emergency room was inconclusive. A police officer testified that David Deegan was in shock after the accident. The hospital records, however, contained no such diagnosis. Instead, the diagnosis was "(1) Scalp laceration, (2) Possible fracture of nasal bridge, (3) Drunk"; the diagnosis of Byron Deegan's condition was "(1) Fracture alveolar ridge, (2) superficial laceration on chin." The diagnosis of John Wadena's condition was "Multiple lacerations—Fractured nose—Drunk." Officer Donald Hopson, who investigated the accident, stated that all of the parties were unconscious at the scene. His partner, Officer Raymond Morse, disagreed. David Deegan testified that he lost consciousness at the scene. Byron Deegan testified that he regained consciousness at General Hospital. John Wadena testified that he, too, had awakened at General Hospital. The hospital records, however, state, "no loss of consciousness" for both Byron and David Deegan. Thus, the evidence was not conclusive on the issue of whether plaintiffs' alleged intoxication was germane to the medical treatment they required.

As there are no Minnesota cases directly on point, the parties both urge the court to turn to the case law of other jurisdictions for analogous factual situations. There are indeed many cases in other jurisdictions which have considered the admissibility of hospital records showing intoxication in auto accident cases. Only a few of the reported cases, however, address themselves to the specific question of whether such hospital record entries are germane to medical history, treatment, and diagnosis.[4] Case

---

[4] There are a number of cases which have simply held that hospital records with entries referring to intoxication were admissible or inadmissible in factual situations similar to the one in the case at bar without considering the issues raised here. See, Thomas v. Hogan, 308 F. 2d 355 (4 Cir. 1962) (admissible); Reed v. Order of United Commercial Travelers of America, 123 F. 2d 252 (2 Cir. 1941) (admissible); Lusardi v. Prukop, 116 Cal. App. 506, 2 P. 2d 870 (1931) (inadmissible); Weller

law from foreign jurisdictions is not too helpful. Authorities can be found to support either view. Furthermore, they are sometimes based on statutes that differ from ours. However, for what it is worth, we have chosen to review a few of the decisions relied upon by the parties. Even those cases frequently consider the question of whether intoxication is germane to medical history, treatment, and diagnosis with little discussion.[5]

Mrs. Bush relies upon Sarrio v. Reliable Contracting Co. Inc. 14 Md. App. 99, 286 A. 2d 183 (1972), one of the few cases to consider the problem raised here in some detail. There, the trial court had admitted hospital records that showed that appellant was drunk and had alcoholic breath. The appellate court held that

---

v. Fish Transport Co. 123 Conn. 49, 192 A. 317 (1937) (inadmissible); Job v. Grand Trunk Western Ry. Co. 245 Mich. 353, 222 N. W. 723 (1929) (inadmissible); Tyson v. Bittner, 3 App. Div. 2d 861, 161 N. Y. S. 2d 710 (1957) (admissible); Roberto v. Nielson, 262 App. Div. 1035, 30 N. Y. S. 2d 334 (1941), affirmed without opinion, 288 N. Y. 581, 42 N. E. 2d 27 (1942) (admissible); Geroeami v. Fancy Fruit & Produce Corp. 249 App. Div. 221, 291 N. Y. S. 837 (1936) (inadmissible); Natwick v. Moyer, 177 Ore. 486, 163 P. 2d 936 (1945) (admissible). Thus, defendant's reliance on Reed v. Order of United Commercial Travelers of America, *supra,* and Tyson v. Bittner, *supra,* is misplaced.

[5] In Kissinger v. Frankhouser, 308 F. 2d 348 (4 Cir. 1962), affirming 194 F. Supp. 276 (E. D. Va. 1961), certiorari denied, 372 U. S. 908, 83 S. Ct. 721, 9 L. ed. 2d 717 (1963), the court held admissible results of a blood alcohol test entered in the records of a naval hospital on the grounds that the test was medically relevant to determine whether the defendant's symptoms were the product of his intoxication or of his head injury. In Bauer v. Veith, 374 Mich. 1, 130 N. W. 2d 897 (1964), the Michigan Supreme Court affirmed the trial court's decision in excluding from evidence a hospital record showing a blood alcohol reading in an automobile accident case. Without explaining why it felt the test was not medically relevant, the court simply stated that the record "would be a matter of *irregular* if not *extraordinary* course of hospital record keeping," continuing to note that "[d]ecidedly, such action would not be deemed as incident to or a part of hospital treatment." 374 Mich. 5, 130 N. W. 2d 900. But see, Boehm v. St. Louis Public Serv. Co. 368 S. W. 2d 361 (Mo. 1963).

the notations were "pathologically germane," noting that appellant was seriously injured and suffered from a broken leg, a shoulder separation, and a cerebral concussion, and that his intoxication might well affect the course of his treatment.

Attempting to compare Sarrio to this case is difficult because of the different types of injuries suffered by the patients in question. The medical relevance of intoxication notations must turn upon the types of injuries suffered by the patient and the types of treatment contemplated by the hospital.[6] Whether the notation is medically relevant under differing circumstances seems to be a technical question, difficult to make without expert medical testimony.

There are a few cases which appear to solve this problem by holding that the medical relevance of intoxication notations is a question of fact for the trial court and that its determination of the issue should be reversed on appeal only if clearly erroneous.

D'Amato v. Johnston, 140 Conn. 54, 97 A. 2d 893 (1953), on which Mrs. Bush relies, expressly treats the question as one of fact for the trial court. There, plaintiff was admitted to the hospital emergency room with fractures and a history of unconsciousness following the accident. The hospital records contained several references to his apparent intoxication. In resolving the question of whether the entries were medically germane, the appellate court deferred to the finding of the trial court, stating:

"In the present case, therefore, the question is whether the fact that D'Amato was intoxicated when he entered the hospital

---

[6] Shaughnessy v. City of New York, 7 App. Div. 2d 734, 180 N. Y. S. 2d 621, 622 (1958), further illustrates the problem of comparing different factual situations in an attempt to determine medical relevance. There, a hospital record indicating that plaintiff's intestate drank a pint of whiskey a day was held medically relevant and the decision of the trial court excluding that statement was reversed on the theory that "[t]his admission also related to the medical aspects of the situation, particularly in view of other entries in the record to the effect that the intestate was an alcoholic."

was relevant to a proper diagnosis of his injuries and a proper treatment of them. The statute provides that an entry shall be admissible *if the trial judge shall find that it was made in the regular course of any business.*[7] This means that the relevancy of the entries concerning D'Amato's intoxication to the hospital's business was a preliminary question of fact for the trial judge to decide. We may not interfere with the trial judge's decision unless it is one which he could not reasonably have reached. Obviously, his decision in this case was not unreasonable." (Italics supplied.) 140 Conn. 61, 97 A. 2d 897.

Leonard v. Boston Elevated Ry. Co. 234 Mass. 480, 125 N. E. 593 (1920), another case upon which Mrs. Bush relies, can be read as supporting the same proposition.[8] There, the appellate court affirmed the trial court's decision that the records were admissible, stating:

"It is difficult to test the application of the statute in the present case, by reason of the meagreness of the record. The location, kind and extent of the plaintiff's injuries, and other facts that might assist us, are not disclosed. As the only objection made to the evidence was a general one, it was admissible if competent in any aspect of the case. We are unable to say *as matter of law* that the 'Odor of alcohol on breath' could not relate to the plaintiff's medical history." (Italics supplied.) 234 Mass. 483, 125 N. E. 594.

The approach taken by the Connecticut court has much to recommend it. It seems most difficult for this court to evaluate testimony and determine as a matter of fact whether a particular

---

[7] Our statute does not contain this provision.

[8] It does appear, however, that the Massachusetts courts have adopted another reading of the case, apparently reading it as holding that such notations are always admissible without regard to the facts of the particular case and that exclusion of them constitutes reversible error. See, Cowan v. McDonnell, 330 Mass. 148, 111 N. E. 2d 759 (1953); Clark v. Beacon Oil Co. 271 Mass. 27, 170 N. E. 836 (1930); Bilodeau v. Fitchburg & L. St. Ry. Co. 236 Mass. 526, 128 N. E. 872 (1920).

notation in a hospital record is medically relevant. Although the Minnesota act does not expressly authorize the trial court to decide whether an entry was made in the regular course of business, as the Connecticut statute does, this court has held, in cases involving the Uniform Business Records as Evidence Act, that questions of foundation, materiality, and relevance are questions of fact for the trial court and we have refused to disturb the rulings made by that court in the absence of a showing of abuse of discretion. See, City of Fairmont v. Sjostrom, 280 Minn. 87, 157 N. W. 2d 849 (1968); Lund v. Village of Princeton, 250 Minn. 472, 85 N. W. 2d 197 (1957); Meemken v. O'Hara, 243 Minn. 138, 66 N. W. 2d 601 (1954); Schoonover v. Prudential Ins. Co. 187 Minn. 343, 245 N. W. 476 (1932).

On the facts of this case, it is very difficult to determine from the record whether the intoxication notations were medically relevant. The testimony of Dr. Robert L. Meller, the only witness called to establish their relevance, is susceptible of two determinations. Resolving the fact issue created by his testimony from the record is almost impossible. The trial court, who had the opportunity to actually hear the testimony and observe the demeanor of the doctor, would seem to be in a far better position to resolve the question of whether the notations were germane to medical history, diagnosis, or treatment. As the evidence created a fact issue, the trial court did not abuse its discretion in excluding the notations, and thus its decision should not be disturbed on appeal.

Respondents argue that the trial court could also have properly excluded the stricken portions of the hospital records on the grounds that no proper foundation had been laid for their admission. It appears that respondents are claiming that some of the comments made in the entries could have been hearsay statements of third persons and that there was no showing the blood test was properly made.

At the outset, it should be noted that David Deegan is precluded from making this argument on appeal. At the pretrial

hearing, his counsel expressly waived objection to the hospital records based on lack of foundation, reserving all other objections he might have to the exhibits. The other two respondents, however, should not be precluded from making the argument. Their counsel made no such waiver but rather objected to the offending comments regarding intoxication on the grounds of lack of foundation.

Evaluating that objection on the state of this record is difficult. It was respondents who introduced the hospital records, apparently for the purpose of showing the extent of the injuries suffered by Wadena and the Deegans. Counsel for respondents stated that the medical records librarian from Hennepin County General Hospital was prepared to testify for the purposes of establishing foundation, but she failed to do so after an off-the-record discussion among counsel and the court, during which counsel apparently stipulated as to the foundation for these records. By that time, however, the sections relating to intoxication had been expunged, and it would not seem that any stipulation as to those notations could be inferred from the conduct of counsel for respondents.

At the time of the pretrial hearing when Mrs. Bush's counsel opposed the expungement of the intoxication notations, he made no offer of proof as to the medical relevance of the notations or as to foundation. The trial court simply made its ruling upon the oral argument of counsel. During trial, on the record, and out of the hearing of the jury, Mrs. Bush's counsel made his offer of proof on the issue of the medical relevance of the notations. Why he failed to make a similar offer of proof as to the foundation for these portions of the record, in the light of the challenges to foundation made by opposing counsel at the pretrial hearing, is unexplained. Nevertheless, the record is devoid of any evidence going to show foundation for these entries.

There are no Minnesota cases dealing with the question of what foundation must be established under the Uniform Busi-

ness Records as Evidence Act for admission of documents showing the results of blood alcohol tests.

There are, however, a few cases from other jurisdictions which consider the precise problem. They generally take the position that one need not introduce the testimony of the person performing the blood alcohol test in order to establish foundation, but that it is enough to show that the test was performed by qualified hospital personnel and that the record of the results was made contemporaneously or within a reasonable time after the test.[9] The rationale is that the purpose of business records statutes is to dispense with the need for detailed foundation and direct testimony of the persons making the test. There seems to be little purpose in attempting to analyze and reconcile the slightly different standards of admissibility established in these cases. Here, the question is not whether the evidence was adequate to establish foundation, but, rather, whether portions of the records were admissible without any showing of foundation at all. It is quite clear that some foundation for such test results must be established. Minn. St. 600.02 itself requires that the "custodian" or "other qualified witness" testify to the "identity and the mode of * * * preparation" of the record. The statute also requires the trial court to satisfy itself that the sources of information, method, and time of preparation were proper. The trial court had no opportunity to do so in this case. It is clear that the party introducing the record of blood alcohol test results must introduce minimal evidence to identify the report and explain the methods and procedures used in its production. State v. Foster, 198 Kan. 52, 422 P. 2d 964 (1967). The problem in this case is not that foundation is inadequate, but, rather, that counsel for Mrs. Bush failed to make an offer of proof to show that he could

---

[9] See, e.g., Thomas v. Hogan, 308 F. 2d 355 (4 Cir. 1962); Brown v. Collins, 223 So. 2d 453 (La. App. 1969). Cf. Barker v. California-Western States Life Ins. Co. 252 Cal. App. 2d 768, 61 Cal. Rptr. 595 (1967); Interstate Life & Accident Ins. Co. v. Whitlock, 112 Ga. App. 212, 144 S. E. 2d 532 (1965); Lessenhop v. Norton, 261 Iowa 44, 153 N. W. 2d 107 (1967).

establish foundation if the test results were otherwise admissible.

A similar problem exists with respect to the other notations indicating intoxication. It seems clear that such notations are inadmissible in the absence of a showing of the identity of the person who made them and his source of information. See, Meeks v. Lunsford, 106 Ga. App. 154, 126 S. E. 2d 531 (1962); Ward v. Thistleton, 32 App. Div. 2d 846, 302 N. Y. S. 2d 339 (1969).

Because Mrs. Bush's counsel failed to make an offer of proof, the entries must be held inadmissible for want of foundation, even if they would otherwise be admissible.

Mrs. Bush argues that the trial court erred in refusing to instruct the jury as to Minn. St. 169.14, subd. 3, which provides:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed *when approaching and crossing an intersection* or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions." (Italics supplied.)

Essentially, Mrs. Bush contends that the instruction should have been given because as Byron Deegan approached the intersection, he was aware that the Bush vehicle was in his lane of traffic and presented a hazard and thus he should have reduced his speed. This would have nothing to do with entering an intersection. Rather, it would relate to due care on which the court did instruct the jury. Respondents argue that the existence of the intersection had nothing to do with the accident.

The trial court did instruct the jury as to Minn. St. 169.14, subds. 1 and 2.[10]

---

[10] Minn. St. 169.41, subd. 1, provides: "Subdivision 1. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted

At the close of the charge, the trial court asked counsel if they had any additions or corrections to the charge. Mrs. Bush's counsel did ask for one correction on another point, but said nothing about the court's failure to instruct on Minn. St. 169.14, subd. 3.

Rule 51, Rules of Civil Procedure, requires that counsel object to omissions in the charge before the jury retires. In the absence of an objection, an error in the instruction may be assigned as a ground for a new trial only if the error is one of "fundamental law or controlling principle."

Here it seems clear that counsel for Mrs. Bush was under an obligation to call the court's attention to the omission to charge on § 169.14, subd. 3, if it was error at all. See, Walker v. Ruvelson, 257 Minn. 391, 102 N. W. 2d 19 (1960). In that case defendant's counsel requested certain instructions as to speed and stop sign statutes. The court gave only some of the requested instructions. At the close of the charge, the court asked counsel whether there were any omissions and both counsel remained silent. Later, defendant's counsel assigned failure to give the requested instructions as grounds for his motion for a new trial. As there was only the testimony of one witness to indicate that the vehicle might have been traveling at 35 miles per hour rather than the permissible 30, this court held that such testimony did not require that an instruction on speed be given and that under the circumstances the trial court could justifiably have concluded that the instructions given were in accordance with defendant's theory of the case.

---

as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

Section 169.14, subd. 2, provides in relevant part: "Where no special hazard exists the following speeds shall be lawful, but any speeds in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that the speed limit within any municipality shall be a maximum limit and any speed in excess thereof shall be unlawful:

(1)   30 miles per hour in an urban district."

In the case now before us the evidence was almost conclusive that the Deegan car was traveling under the permissible speed limit. Furthermore, Franklin Avenue was a through street and entry to it was protected by stop signs. As an additional fact, review of the attached plat of the avenues and the location where the collision occurred, shows clearly that the Deegan car had also passed the intersection on his side of Franklin Avenue when the collision occurred. Both cars were traveling on Franklin Avenue in opposite directions. Neither had entered the intersection. Mrs. Bush relies on Bachman v. Lieser, 289 Minn. 298, 184 N. W. 2d 11 (1971), for the proposition that an instruction on subd. 3 should always be given in a case involving a driver approaching an intersection who has notice of possible hazards. We think this is a misstatement of our holding in Bachman. What we said was that the "speed statute" should routinely be read to the jury in automobile accident cases. The trial court in Bachman had refused to instruct on any subdivisions of § 169.14. When we turned our attention to subd. 3, we said (289 Minn. 301, 184 N. W. 2d 14):

"* * * We have held that one who has the right-of-way is not necessarily negligent in failing to slow down at every intersection.[11] Adelmann v. Elk River Lbr. Co. 242 Minn. 388, 391, 65 N. W. (2d) 661, 664. The statute requiring reduced speed at intersections is applicable only when the driver having the right-

---

[11] This is particularly true where a driver is traveling on a through highway protected by a stop sign. Minn. St. 169.20, subd. 3, requires a driver preparing to enter or cross a through highway to yield the right-of-way to vehicles proceeding on the through highway. We have held that a driver proceeding on a through highway has a right to assume that entering or crossing vehicles will yield. See, Goeden v. Thompson, 289 Minn. 293, 184 N. W. 2d 8 (1971); Seivert v. Bass, 288 Minn. 457, 181 N. W. 2d 888 (1970); Olson v. Anderson, 224 Minn. 216, 28 N. W. 2d 66 (1947). Similarly, a left-turning driver must yield the right-of-way to oncoming vehicles, and the driver of the oncoming vehicle has a right to rely on the turning driver's duty to yield. Minn. St. 169.20, subd. 2. See, also, Merrill v. Kjelgren, 280 Minn. 456, 160 N. W. 2d 155 (1968).

of-way is put on notice of the possibility of potential danger. Neal v. Neal, 238 Minn. 292, 297, 56 N. W. (2d) 673, 677; Schlukebier v. LaClair, 268 Minn. 64, 67, 127 N. W. (2d) 693, 696; Tauber v. Buffalo Lake Public School Dist. 283 Minn. 383, 168 N. W. (2d) 327; Lapides v. Wagenhals, 285 Minn. 403, 173 N. W. (2d) 334; Seivert v. Bass, 288 Minn. 457, 181 N. W. (2d) 888."

We think that under all the facts in this case, the trial court was justified in refusing to instruct on subd. 3.

Plaintiff Wadena seeks to justify the exclusion of references to the percentage of alcohol in his blood on the grounds that the taking of blood without his consent during a period of unconsciousness violated his constitutional rights. This issue is not before us. In the first place, Wadena has not appealed. Moreover, the issue was not raised in the trial court but is raised here for the first time on appeal. We decline to consider the issue under these circumstances.

Affirmed.