Jerome J. MYERS, Respondent,

v.

WINSLOW R. CHAMBERLAIN COMPANY, d/b/a Holiday Inn Plymouth, Appellant.

No. CO–89—169.

Court of Appeals of Minnesota.

Aug. 1, 1989.

Review Denied Sept. 27, 1989.

Gary L. Manka, Brian L. Sobol, Katz, Davis, Manka & Haugan, Ltd., Minneapolis, for respondent.

James T. Martin, Gislason, Martin & Varpness, P.A., Edina, for appellant.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

This is a personal injury case arising out of a fall by respondent Jerome J. Myers in the parking lot of appellant Winslow R. Chamberlain Company, d/b/a Holiday Inn Plymouth. Through a special verdict form, the jury apportioned 80% negligence to Holiday Inn and 20% negligence to Myers and awarded Myers $243,256.54.

Post-trial motions for judgment notwithstanding the verdict or new trial were denied by the trial court and judgment was entered on November 15, 1988. On November 22, 1988, a second judgment was entered relating to the taxation of costs and disbursements. Holiday Inn appeals from the judgment entered on November 22, 1988. We affirm in part, reverse in part and remand.

## FACTS

On April 16, 1983, Myers left his home after having an argument with his wife. After first going to a friend's home, Myers went to the Holiday Inn and arrived at approximately 9 p.m. He parked his car underneath the canopy and went directly to the bar. He stayed there until about 11:30 p.m. and had consumed about four or five beers. This was the first alcohol Myers had consumed since completing chemical dependency treatment 13 months prior to this date.

When Myers left the bar at 11:30 p.m., he went to the front desk to register. While registering, he asked the clerk to "pick up a few more beers" for him. The hotel clerk told Myers to drive his car to the back of the hotel and park in the rear parking lot. Myers complied. He then got out of his car, removed his suitcase from his trunk, took two steps, fell on some ice, and was injured.

After falling, Myers crawled about 200 feet to the door of the hotel. Once there, he was unable to unlock the door. He crawled back to his car and drove to the front of the hotel where Richard Richman, the assistant hotel manager called for help.

Richman testified that he was with Myers for 30 to 45 minutes before help arrived and that he helped Myers to the car. Richman did not recall Myers as having been intoxicated on that evening.

### The Weather Condition

Two days before Myers' fall, there had been a significant snowfall of approximately 13 to 17 inches. The snow, however, had been removed from the lot before Myers' fall. Weather records for April 16, 1983 reveal that the temperature was 37 degrees at 3 p.m. and dropped to 28 degrees by midnight. This variation in temperature over nine hours caused a slight thaw and re-freeze.

Myers testified there was no salt or sand on the lot when he fell. Richman said he was not sure whether any salt or sand was placed on the lot in the two days prior to Myers' fall. Richman further testified he did not recall the condition of the lot on the evening of the accident and made no in-spection of the lot after Myers had fallen. Richman did not file a manager-on-duty report (MOD) after the accident although it was standard procedure to do so after an incident at the hotel to inform the general manager of the events that occurred the night before.

### The Parking Lot

The lot where Myers fell measures approximately 275 feet by 80 feet. There is a downward slope in the parking lot away from the building that permits surface water to flow down the middle of the parking lot, and gather in a catch basin or manhole. There is one floodlight on top of a 40-foot pole which was about 100–150 feet from where Myers had fallen. Myers felt the lot was dimly lit.

After the accident, Myers was taken to North Memorial Hospital. There, doctors determined he had fractured his right tibia and fibula. A blood test was taken that revealed a blood alcohol concentration of 125 milligrams per dilution.

At trial, Holiday Inn raised Myers' intoxication as a defense. Dr. Joseph Bocklage, the treating orthopedist, testified by deposition regarding Myers' medical treatment. When asked to interpret the blood alcohol reading, however, Bocklage stated he was unable to do so or indicate how it related to Myers' sobriety.

Myers objected to the portion of Bocklage's testimony regarding the blood alcohol test results under Minn.R.Evid. 403, claiming that the probative value of the test result was outweighed by its prejudicial effect in the absence of a toxicologist who could establish the effect that the consumed alcohol would have had on Myers' reflexes, perception and balance. The trial court excluded the testimony, but ultimately read JIG 108, the intoxication instruction, and allowed Myers to testify regarding his alcohol consumption that evening.

The trial court submitted the matter to the jury with instructions on negligence and included a special verdict question on the issue of both Myers and Holiday Inn's negligence. Ultimately, the jury returned a verdict finding Holiday Inn 80% negli-

gent, Myers 20% negligent, and awarding damages to Myers in the amount of $243,-256.54.

Post-trial motions made by Holiday Inn for JNOV and for a new trial were denied. Subsequently, judgment was entered relative to taxation of costs and disbursements.

## ISSUES

1. On appeal from a judgment relating to taxation of costs and disbursements, may Holiday Inn obtain review of all issues of the previous judgment regarding the jury verdict and denial of post-trial motions?

2. Did the trial court err in denying Holiday Inn's motion for JNOV?

3. Did the trial court err in denying Holiday Inn's motion for a new trial?

## ANALYSIS

■ 1. The trial court entered judgment on November 15, 1988 regarding the jury verdict and denial of post-trial motions. Holiday Inn has clearly appealed from the judgment entered on November 22, 1988 relating only to the taxation of costs and disbursements.

Minn.R.Civ.App.P. 103.01, subd. 1(c) provides that "a statement specifying and describing the judgment or order from which the appeal is taken" must be provided in the notice of appeal. The Minnesota Supreme Court, however, has consistently held that "notices of appeal are to be liberally construed in favor of their sufficiency." *Kelly v. Kelly*, 371 N.W.2d 193, 195 (Minn.1985) (citations omitted). Accordingly, we believe Holiday Inn intended to appeal from the November 15, 1988 judgment, and since Myers has not been prejudiced by this error, we shall consider all of the issues raised herein.

■ 2. A motion for judgment notwithstanding the verdict shall not be granted if there is " 'ANY competent evidence reasonably tending to support the verdict.' " *Johnson v. Alford & Neville, Inc.*, 397 N.W.2d 591, 592 (Minn.Ct.App.1986) (quoting *Thorn v. Glass Depot*, 373 N.W.2d 799, 802 (Minn.Ct.App.1985), *pet for rev. denied*

(Minn. Nov. 1, 1985) (emphasis in original) (citation omitted)). The evidence must be viewed in a light most favorable to the verdict. *Johnson*, 397 N.W.2d at 592 (citing *Thorn*, 373 N.W.2d at 802).

Only where the facts are undisputed and reasonable minds can draw but one conclusion from them does the question for determination become one of law for the court.

*Thorn*, 373 N.W.2d at 802.

### Holiday Inn's Duty to Entrants

■ The test in determining whether a landowner owes a duty to entrants on land is "that of reasonable care under the existing circumstances." *Adee v. Evanson*, 281 N.W.2d 177, 179 (Minn.1979) (citing *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972)).

The Minnesota Supreme Court in *Peterson* abolished the distinction between duties owed to entrants on land based on their status as licensees or invitees. There, the court established factors which must be considered in determining the landowner's duty to entrants, including:

1) The circumstances under which the person enters the premises;

2) the foreseeability or possibility of harm;

3) the duty to inspect, repair, or warn;

4) the reasonableness of inspection or repair;

5) the opportunity and ease of repair or correction.

*Peterson*, 294 Minn. at 174, n. 7, 199 N.W.2d at 648, n. 7. Here, the trial court gave JIG 330 which encompasses the rule in *Peterson* regarding Holiday Inn's standard of care.

■ Holiday Inn argues the jury's verdict is erroneous since there was no evidence to support that it was causally negligent. We disagree. Because Holiday Inn invites guests to stay in its hotel and is aware that its guests will park in its lot and walk from the lot to the hotel, Holiday Inn has a duty as a matter of law to its patrons to provide safe access from its parking lot to its building.

■ It was entirely reasonable for the jury to consider Holiday Inn's failure to salt and sand a breach of its duty of reasonable care under the circumstances, particularly in Minnesota after a substantial snowfall in early spring where the temperature was fluctuating above and below freezing. The jury also had before it facts revealing the lot was built in such a way that it sloped, causing water to gather in the middle, and Myers opinion the lot was dimly lit.

Since there is competent evidence which reasonably supports the jury's verdict, we hold the trial court's failure to grant JNOV was not erroneous.

*Other Claimed Errors*

Holiday Inn also argues that multiple theories were presented to the jury which required expert testimony. Only one theory, that of negligence, however, was submitted to the jury. The trial court gave JIG 330 which relates to the duty of a possessor to an entrant.

The testimony relating to the sloped parking lot, the lighting, and the water flow was relevant as to Myers' specific knowledge of the hazards of the lot and the foreseeability of harm. While design defect was discussed in chambers at the conclusion of the trial, that theory was not argued to the jury as a separate basis for recovery and there was no jury instruction relating to design defect.

The verdict is consistent with the theory presented to the jury that Holiday Inn breached its duty of reasonable care to Myers.

3. Having found that Holiday Inn has a duty to provide reasonably safe access from its lot to its hotel for its patrons as a matter of law, and that the evidence was sufficient to support the jury's conclusion that Holiday Inn breached that duty, we reject Holiday Inn's argument that the trial court's denial of its motion for a new trial on the grounds that the verdict was contrary to the preponderance of the evidence was erroneous.

A new trial, however, may be granted on all or part of the issues if there were "errors of law occurring at the trial." Minn.R.Civ.P. 59.01(f). Holiday Inn argues that the exclusion of testimony relating to the result of Myers' blood alcohol level on the evening he fell was prejudicial error. We agree.

Evidentiary rulings are within the discretion of the trial court and will not be reversed unless there has been an abuse of discretion. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983).

Although the trial court has broad discretion in such matters, we are disturbed by the trial court's limitation of the cross-examination of Dr. Bocklage. "Counsel traditionally is given considerable leeway in cross examinations, short of questions which harass or are repetitive." *State v. Shamp*, 422 N.W.2d 520, 527 (Minn.Ct.App. 1988), *pet. for rev. denied* (Minn. June 10, 1988).

■ The following cross-examination of Dr. Bocklage regarding the blood alcohol lab report was excluded:

Q. The lab report in there indicates that there was a blood alcohol test that was performed on Mr. Myers at the time of his admission, does it not?

MR. MANKA: Objection. This has been an issue covered already before the judge. And I raise the objection again.

THE WITNESS: Yes.

BY MR. MARTIN:

Q. Does the lab report that you now are looking at indicate the time when the blood was drawn that was tested?

MR. MANKA: Continuing objection to this line of inquiry.

THE WITNESS: 3:48, I believe.

BY MR. MARTIN:

Q. And does the lab report indicate what the results of the blood test was?

A. Yes.

Q. What does the report indicate as the result?

A. 125 milligrams per dilution.

Q. Would you tell the jury what that means?

A. That means that the—in a particular amount of blood that was taken that

there was 125 units of alcohol in that particular dilution of blood.

Q. And do you know what the significance of that is in terms of Mr. Myers' sobriety or lack thereof at the time the blood was drawn?

A. What it indicates is it indicates that Mr. Myers has had something to drink.

Q. Would you understand that report to be saying that he was legally under the influence at the time that the blood was drawn at 3:48?

A. If you mean by legally what that would indicate is that if he was driving that he was above—what's considered the maximum legal limit which is 100.

Q. Thank you. And if the blood sample was only drawn as of 3:48 and if the evidence in this case is that Mr. Myers had his last beer at around 11:30 p.m. so that there is about a four-hour delay, would that suggest to you that the blood level in his—or the alcohol in his blood was higher before the test that was actually done at 3:48?

A. May have been.

Holiday Inn initially argues that the trial court erred in excluding this testimony because there was no proper objection at the taking of the deposition. Objections to the competency of a witness, or the relevancy or materiality of testimony, however, are not waived by failure to make them before or during the taking of the deposition. *See* Minn.R.Civ.P. 32.04(c). Since Myers objected on the record in chambers before trial, his objection was timely.

In any event, Myers objected to the above testimony under Minn.R.Evid. 403, claiming that its probative value was substantially outweighed by the danger of unfair prejudice.

The supreme court addressed the admissibility of entries regarding intoxication in hospital records in *Wadena v. Bush*, 305 Minn. 134, 232 N.W.2d 753 (1975). There, the court held:

The medical relevance of intoxication notations must turn upon the types of injuries suffered by the patient and the types of treatment contemplated by the hospital. Whether the notation is medically relevant under differing circumstances seems to be a technical question, difficult to make without expert medical testimony.

*Id.* at 145, 232 N.W.2d at 760 (footnote omitted).

Further, in *Olstad v. Fahse*, 204 Minn. 118, 282 N.W. 694 (1938), the supreme court determined that testimony relating to the decedent's intoxication at the time of the fatal accident should have been admitted and held that

a witness at the time of the occurrences which he relates was under the influence of liquor is competent to show the impairment of his powers of observation and the likelihood of impaired recollection.

*Id.* at 121, 282 N.W. at 696 (citations omitted).

Here, Myers' blood alcohol test was taken in preparation of surgery to determine whether general anesthesia could be safely administered. This evidence was probative, not prejudicial. In fact, as in *Olstad*, the evidence of Myers' intoxication was crucial to the question of liability. Without this additional evidence, the jury was not given the whole picture, and it was prejudicial error for the trial court to deprive the jury of this information.

Myers asserts Holiday Inn should have made an offer of proof after the trial court sustained his objection, or that it should have brought in a toxicologist to testify regarding the effect which the consumed alcohol would have had on Myers' perception and balance. Holiday Inn's offer of proof, however, was Dr. Bocklage's testimony itself and since the deposition was taken at the end of the first day of trial, Holiday Inn had no time to secure a toxicologist.

Because of the highly prejudicial exclusion of the relevant medical testimony, the lateness of the exclusion, and the insufficient evidence consisting only of the testimony of three witnesses, in the interest of justice we are compelled to grant a new trial on the sole issue of liability. *See* Minn.R.Civ.App.P. 103.04.

Finally, Holiday Inn argues that Myers' trial attorney is guilty of "a willful misrepresentation and distortion of the truth," based on the following language in his closing argument:

> I submit, ladies and gentlemen, that one bit of evidence is absolutely clear. There is no evidence that Mr. Myers was intoxicated. Is there a medical record that says that? Not a bit.

Although Holiday Inn's charge is true, it failed to object to this statement at trial or raise this issue in its motion for JNOV or a new trial. While we do not condone such improper behavior, we regrettably conclude that this issue is not properly before this court. *See Patton v. Minneapolis Street Railway Co.*, 247 Minn. 368, 375, 77 N.W.2d 433, 438 (1956) (to raise claim of misconduct, objection must be made at time of alleged misconduct or at close of argument taken down by reporter and before jury retires, as well as a request for corrective action and failure of court to act).

## DECISION

We affirm the decision of the trial court in denying Holiday Inn's motion for judgment notwithstanding the verdict. We reverse the decision of the trial court in denying a new trial and remand for trial on the sole issue of liability.

Affirmed in part, reversed in part and remanded.

FORSBERG, Judge (dissenting):

I respectfully dissent. I believe any evidentiary errors committed were harmless.